Filed 8/28/17

# IN THE SUPREME COURT OF CALIFORNIA


LATRICE RUBENSTEIN, )
)
      Plaintiff and Appellant, )
)        S234269
      v. )
)    Ct.App. 4/1 D066722
DOE NO. 1 et al., )
)      Imperial County
      Defendants and Respondents. )  Super. Ct. No. ECU08107
_____ )


      In 2012, plaintiff, Latrice Rubenstein, filed a claim with defendant Doe No. 1 (defendant), a public entity, alleging that from 1993 to 1994, when she was a high school student, her cross-country and track coach, who was defendant's employee, sexually molested her. When the claim was denied, she commenced the instant action against defendant and defendants Does Nos. 2-20. She alleged that latent memories of the sexual abuse resurfaced in early 2012, when she was about 34 years old. As explained below, before suing a public entity, one must generally present a timely claim to that entity. The question before us whether the 2012 claim concerning abuse that allegedly occurred from 1993 to 1994 was timely. The Court of Appeal found the claim timely. We disagree.

      A similar issue was before us in *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201 (*Shirk*). In *Shirk*, the plaintiff alleged that from 1978 to 1979, her English teacher, an employee of the defendant school district, sexually molested her. She filed a claim with the school district in 2003 and, shortly thereafter, sued

SEE DISSENTING OPINION.

the school district. "At the time of plaintiff's sexual molestation in 1978 to 1979, the applicable statute of limitations for sexual molestation was one year. (Former [Code Civ. Proc.], § 340, subd. (3).)" (*Id*. at p. 207.) Thus, the cause of action became barred under the statute of limitations. However, statutory changes beginning in 1986 revived her action as far as the statute of limitations was concerned. (*Id*. at pp. 207-208.) In the complaint, the plaintiff "alleged that on September 12, 2003, when she consulted a licensed mental health professional, she learned she was 'suffering from psychological injuries' caused by [the teacher's] sexual abuse of her in 1978 and 1979, when she was a teenager." (*Id*. at p. 210.) On these facts, we held that, although the cause of action had been revived for purposes of the statute of limitations, the claim against the public entity remained untimely.

We explained that, subject to exceptions listed in Government Code section 905, "[b]efore suing a public entity, the plaintiff must present a timely written claim for damages to the entity." (*Shirk*, *supra*, 42 Cal.4th at p. 208.) Compliance with the claim requirement is a condition precedent to suing the public entity. "Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action." (*Id*. at p. 209.) The claim must be presented "not later than six months after the accrual of the cause of action." (Gov. Code, § 911.2, subd. (a).) A plaintiff may apply for leave to present a late claim (Gov. Code, § 911.4, subd. (a)), but only if the application is presented "within a reasonable time not to exceed one year after the accrual of the cause of action." (Gov. Code, § 911.4, subd. (b).)

"Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants. (Gov. Code, § 901 . . . .)" (*Shirk*,

2

*supra*, 42 Cal.4th at pp. 208-209.) The trial court in *Shirk* had "found that plaintiff's cause of action accrued on November 30, 1979 (the last possible act of molestation)." (*Id.* at p. 210.) The plaintiff "did not submit a claim to the School District until September 23, 2003, nearly 25 years after the last act of molestation." (*Ibid.*)

The *Shirk* plaintiff's 2003 claim was clearly untimely if the cause of action accrued for purposes of the claims requirement in November 1979 and did not reaccrue later. In arguing the claim was timely, the plaintiff relied primarily on the legislation that had revived causes of action for childhood sexual molestation that were otherwise barred under the applicable statute of limitations. (Code Civ. Proc., § 340.1 (section 340.1).) As explained in greater detail in *Shirk*, *supra*, 42 Cal.4th at pages 207-208, section 340.1 as it existed at the time of the molestation and as subsequently amended between 1990 and 2002 both expanded the statute of limitations for childhood sexual molestation and revived some causes of action that had already lapsed. It made the action in *Shirk* no longer barred by the statute of limitations.

The plaintiff in *Shirk* made two arguments why the claim was timely: First, "that under section 340.1, subdivision (c), . . . her cause of action against the School District *reaccrued* on September 12, 2003, when she discovered that her present psychological injury was caused by [the teacher's] sexual abuse of her some 25 years earlier"; and, second, "that her duty to present her claim to the School District, as required under the government claims statute, first arose on September 12, 2003, when she discovered that her psychological injury was caused by the teacher's sexual abuse and presented her claim to the School District." (*Shirk*, *supra*, 42 Cal.4th at pp. 210-211, italics added.) We rejected both the section 340.1 and the delayed discovery arguments.

Regarding the section 340.1 contention, we noted that the statute of limitations was not at issue. "Rather, *it is the claim presentation deadline* [citations] that is at issue . . . ." (*Shirk*, *supra*, 42 Cal.4th at p. 209.) We held that section 340.1 did not affect that deadline. We focused on the language of section 340.1, subdivision (c), which revived certain claims for damages "that would otherwise be barred as of January 1, 2003, *solely* because the applicable statute of limitations has or had expired." (*Shirk*, at p. 211, quoting § 340.1, subd. (c).) We explained that "*before* a plaintiff can bring a cause of action against a *public entity*, a timely claim must be presented to the entity; when no claim is timely presented, however, such a cause of action is not barred 'solely' by lapse of the applicable statute of limitations, the phrasing that the Legislature used in the revival provision of subdivision (c). As explained earlier . . . the government claim presentation deadline is not a statute of limitations. Had the Legislature intended to also revive in subdivision (c) the claim presentation deadline under the government claims statute, it could have easily said so. It did not. We thus conclude that as of January 1, 2003, plaintiff's causes of action against the School District were barred by expiration of the time for presenting a claim to the School District." (*Shirk*, at p. 213.)

We found support for this conclusion "in the public policies underlying the claim presentation requirement of the government claims statute. Requiring a person allegedly harmed by a public entity to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others. [Citations.] The requisite timely claim presentation before commencing a lawsuit also permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity,

4

allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.] The notice requirement under the government claims statute thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers." (*Shirk*, *supra*, 42 Cal.4th at p. 213.)

We have reiterated these policies more recently. " 'The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." ' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 [similar]; *Perez v. Golden Empire Transit Dist.* (2012) 209 Cal.App.4th 1228, 1234 [summarizing these policy considerations].)

In *Shirk*, we also rejected the plaintiff's delayed discovery argument that the plaintiff's "duty to present a claim to the School District did not arise until September 12, 2003, when at the age of 41 she first learned from a mental health practitioner that her adult-onset emotional problems resulted from [the teacher's] molestation of her as a teenager, some 25 years earlier." (*Shirk*, *supra*, 42 Cal.4th at p. 214.) We explained "that the Legislature's amendment of section 340.1, subdivision (c), revived for the year 2003 certain lapsed causes of action against *nonpublic entities*, but that nothing in the express language of those amendments or in the history of their adoption indicates an intent by the Legislature to apply against *public entity defendants* the one-year revival provision for certain causes of action. (§ 340.1, subd. (c).) In light of that conclusion, it seems most unlikely that the Legislature also intended revival applicable to persons who discovered only in 2003 a new injury attributable to the same predicate facts underlying a

5

cause of action previously barred by failure to comply with the government claims statute." (*Ibid.*)

*Shirk* agreed with *County of Los Angeles v. Superior Court* (2005) 127 Cal.App.4th 1263, 1269, which, as we described it, similarly "held that the Legislature's 2002 amendment of section 340.1 did not reflect the Legislature's intent 'to excuse victims of childhood sexual abuse' from complying with the government claims statute when suing a public entity defendant." (*Shirk*, *supra*, 42 Cal.4th at p. 207.)

Justice Werdegar dissented in *Shirk*. (*Shirk*, *supra*, 42 Cal.4th at pp. 214-216 (dis. opn. of Werdegar, J.).) She recognized that the plaintiff's claim first accrued in 1979 but contended that the "claim accrued again in 2003." (*Id*. at p. 214.) She argued that the "applicable statute of limitations, which in this case is the delayed discovery statute [i.e., section 340.1], defines accrual for purposes of the claim presentation statute. (See Gov. Code, § 901.) Having redefined accrual in the applicable statute of limitations, the Legislature necessarily redefined accrual, and plaintiff's obligations, under the claim presentation statute." (*Shirk*, at pp. 214-215.)

*Shirk*, *supra*, 42 Cal.4th 201, is factually distinguishable. In *Shirk*, the cause of action had lapsed and was later revived. (*Id*. at pp. 207-208.) In this case, plaintiff's claim never actually lapsed. Instead, statutory changes extended the time period before it lapsed.[1] Because of this, plaintiff's cause of action was

---

[1] At the time of the alleged molestation, the limitation period for plaintiff's claim was eight years following the age of majority (i.e., to age 26) "or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever occurs later." (Former § 340.1, subd. (a), as amended by Stats.1990, ch. 1578, § 1, p. 7550.) As of that time, a plaintiff could not bring an action against a third party such as defendant. But in 1998, section

6

never barred "solely because the applicable statute of limitations . . . had expired." (§ 340.1, subd. (c).) But, for the following reasons, we believe *Shirk*'s reasoning leads to the conclusion that this action is barred for failure to file a timely claim.

As noted, the claim must be presented "not later than six months after the *accrual* of the cause of action." (Gov. Code, § 911.2, subd. (a), italics added.) The cause of action here accrued at the time of the alleged molestation. (*Shirk*, *supra*, 42 Cal.4th at p. 210.) Plaintiff could have sued at that time. We must

340.1 was amended to permit an action against certain third parties. The 1998 amendment provided that the limitations period within section 340.1, subdivision (a), applied "for any of the following actions: [¶] (1) An action against any person for committing an act of childhood sexual abuse. [¶] (2) An action for liability against any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in injury to the plaintiff. [¶] (3) An action for liability against any person or entity where an intentional act by that person or entity was a legal cause of the childhood sexual abuse with resulted in the injury to the plaintiff." (Former § 340.1, subd. (a), as amended by Stats.1998, ch. 1032, § 1, p. 7785.) The 1998 amendments also provided that no claim against a third party "may be commenced on or after the plaintiff's 26th birthday." (Former § 340.1, subd. (b), added by Stats. 1998, ch. 1032, § 1, p. 7785.)

The most recent change to section 340.1 came in 2002, when defendant was still under the age of 26 years. This time, the Legislature amended section 340.1, subdivision (b), to provide that a plaintiff may bring a claim against a third party even after the plaintiff's 26th birthday "if the person or entity knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment." (§ 340.1, subd. (b)(2), as amended by Stats. 2002, ch. 149, § 1, pp. 752-753.) Plaintiff relies on this theory in her lawsuit.

In sum, whenever plaintiff's claim came close to expiring, the Legislature expanded the statute of limitations. (See *Quarry v. Doe I* (2012) 53 Cal.4th 945, 974 ["an enlarged limitations period is considered to apply *prospectively* and appropriately to actions that are *not* already barred even if the conduct occurred prior to the enactment"].)

7

decide whether the changes to section 340.1 caused it to *reaccrue* at a later time. *Shirk* held the changes did not do so, at least for causes of action that had lapsed and been revived. But plaintiff argues, and the Court of Appeal found, that a claim that had never lapsed did reaccrue under section 340.1.

In support of this conclusion, plaintiff and the Court of Appeal rely largely on Government Code section 901, which provides that "[f]or the purpose of computing the time limits prescribed by [Government Code] Sections 911.2, 911.4, 945.6, and 946.6, the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon." The Court of Appeal stated: "The accrual date for claim filing purposes is the same as the accrual date for a corresponding civil cause of action. (Gov. Code, § 901.) Code of Civil Procedure section 340.1 sets forth the limitations period for filing an action for childhood sexual abuse. (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 952 (*Quarry*).) Thus, section 340.1 governs the accrual date for claim filing purposes."

The Court of Appeal's analysis presents the question of whether section 340.1 provides a new accrual date for purposes of Government Code section 901's claims presentation rule. We have distinguished between statutes that postpone the *accrual* date for an action and statutes that temporarily suspend the running of a statute of limitations without affecting the accrual date. In *Cuadra v. Millan* (1998) 17 Cal.4th 855, 864-865, disapproved on other grounds in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4, we quoted Witkin as "correctly" stating, " 'The statute [of limitations] may be tolled (i.e., *its operation suspended*) by various circumstances, events or acts.' (3 Witkin, Cal. Procedure (4th ed. 1996) Actions,

8

§ 407, p. 513, italics added.)" We further explained, "Similarly, statutes and case law prescribe a number of rules *postponing the accrual* of a cause of action until a specified event occurs . . . . Some judicial opinions loosely describe such rules as 'tolling the statute of limitations,' but again Witkin puts it more accurately: 'The foregoing rules of delayed *accrual* are to be distinguished from rules that, despite accrual of the cause of action, *toll or suspend* the running of the statute.' (3 Witkin, Cal. Procedure, *supra*, Actions, § 462, pp. 582-583, italics in original.)" (*Cuadra v. Millan*, at p. 865, fn. 11; see 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 496, p. 635.)

*Shirk*'s reasoning suggests that, like a tolling statute, section 340.1 does not postpone the date of accrual. We thus agree with *V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499, in which the court similarly held that the section did not provide a new accrual date.

"In making this argument, [the plaintiff] confounds the principles of limitations periods and accrual dates. *Fox v. Ethicon Endo-Surgery. Inc.* (2005) 35 Cal.4th 797, 806-807, clarified the distinction between and purposes of the two concepts: ' "Statute of limitations" is the collective term applied to acts or parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action. [Citations.] There are several policies underlying such statutes. One purpose is to give defendants reasonable repose, thereby protecting parties from "defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps." [Citations.] A statute of limitations also stimulates plaintiffs to pursue their claims diligently. [Citations.] A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds. [Citations.] [¶] A plaintiff must bring a claim within the limitations period after accrual of the cause of action. (Code Civ. Proc., § 312 ["Civil actions, without exception, can only be

commenced within the periods prescribed in this title, after the cause of action shall have accrued"]; *Norgart* [*v. Upjohn Co.* (1999) 21 Cal.4th 383,] 397.)  In other words, statutes of limitations do not begin to run until a cause of action accrues.  (*Romano v. Rockwell International, Inc.* (1996) 14 Cal.4th 479, 487.)  [¶] Generally speaking, a cause of action accrues at "the time when the cause of action is complete with all of its elements."  [Citations.]'

"Keeping these principles in mind, we conclude that while section 340.1 extends the time during which an individual may commence a cause of action alleging childhood sexual abuse, *it does not extend the time for accrual of that cause of action.*"  (*V.C. v. Los Angeles Unified School Dist.*, *supra*, 139 Cal.App.4th at pp. 509-510, italics added.)

In this respect, section 340.1 is comparable to Code of Civil Procedure section 340.2 , subdivision (a), which creates a statute of limitations for asbestos-related injuries of "one year after the date the plaintiff first suffered disability" (*id.*, subd. (a)(1)) or "one year after the date the plaintiff either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure" (*id.*, subd. (a)(2)).

In *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127 (*Hamilton*), we concluded that this provision is not a typical accrual rule.  The plaintiff in *Hamilton* was exposed to asbestos from the early 1940s to 1963.  He was diagnosed with asbestosis in 1979, but was not disabled.  His conditioned worsened, and he filed suit against various asbestos manufacturers in 1993.  In 1996, he was diagnosed with mesothelioma, a form of cancer that is also caused by exposure to asbestos.  He then filed a second suit against the asbestos manufacturers.  At issue was whether Code of Civil Procedure section 340.2, subdivision (a)'s statute of limitations barred the second suit.  We held that the suit was not time-barred.  We explained:  "Although section 340.2 applies only to

10

actions for injury or illness arising from asbestos exposure, the statute does not make the limitations period run from the date of that injury or illness or its discovery, as similar statutes commonly provide. [Citation.] Subdivision (a) of section 340.2 selects a different date, making the limitations period run instead from the date the plaintiff suffered 'disability' and discovered that the disability was caused by asbestos exposure." (*Hamilton*, at p. 1138.) Before section 340.2 was enacted, we said, the accrual date for asbestos-related injuries "was also the date of the beginning of the limitations period in cases in which the latent injury or disease arose from exposure to asbestos. [Citation.] But section 340.2 changed that rule, declaring a separate and distinct date for the beginning of the limitations period in asbestos cases, i.e., the date of *disability* as specially defined in the statute. The result . . . is that although the filing of an action for asbestos-related injury may be said . . . to be an 'admission' that the cause of action has accrued in the ripeness sense, it is *not* an admission that the limitations period of section 340.2 has simultaneously begun." (*Hamilton*, at pp. 1144-1145.)

Section 340.1 is similar to Code of Civil Procedure section 340.2, subdivision (a). While a cause of action for childhood sexual abuse generally accrues much earlier "in the ripeness sense" — a plaintiff will have a ripe cause of action that could be brought much closer in time to the alleged abuse — section 340.1 creates "a separate and distinct date for the beginning of the limitations period" (*Hamilton*, *supra*, 22 Cal.4th at pp. 1144-1145) in certain child sex abuse cases involving latent injuries, i.e., "the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse." (§ 340.1, subd. (a).)

Government Code section 901's reference to "accrual" of the cause of action for which a claim must be made tracks *Hamilton*'s distinction between accrual in "the ripeness sense" (*Hamilton*, *supra*, 22 Cal.4th at p. 1145) — i.e., the

11

time at which all the elements of a cause of action are present — and the beginning of a separate, extended limitations period for latent injury stemming from the same known wrongful act. Plaintiff's cause of action had accrued in the ripeness sense at the latest in 1994, the time of the last alleged molestation. Section 340.1 did not cause it to reaccrue.

Our holding in *Shirk*, *supra*, 42 Cal.4th 201, supports this conclusion. If Government Code section 901's reference to "accrual" had encompassed the beginning of a separate, extended limitations period for latent injury stemming from known abuse, then presumably the plaintiff's claim in *Shirk* would have been timely, whether or not she had filed a timely claim immediately after the abuse occurred. *Shirk* expresses the contrary conclusion that, for purposes of the claim presentation requirement, the cause of action accrued when the abuse occurred — and, additionally, no cause of action accrued at the time the latent injury stemming from the abuse was discovered.

Our opinion in *Quarry* also reflects this understanding of *Shirk*'s implications: "[I]f adult psychological injury were a separate injury giving rise to a cause of action accruing upon discovery of the connection between the adult injury and childhood abuse, presumably *Shirk* should have been litigated and resolved differently. (*Shirk*, *supra*, 42 Cal.4th 201.) There we pointed out that causes of action accrue for childhood sexual abuse *at the same time* for the purpose of claims against public entities under the government claims statute (see Gov. Code, § 911.2), and for the purpose of an ordinary civil action. (*Shirk*, *supra*, at p. 210.) The plaintiff in *Shirk* contended that her claim under the government claims statute was timely because she had only recently discovered that her adult psychological injury was caused by childhood sexual abuse by one of the defendant's employees. (*Id.* at p. 206.) We said that she could not take advantage of the revival period of section 340.1, subdivision (c) because it did not

12

refer to claims made under the government claims statute. (*Shirk*, *supra*, at pp. 212–214.) But if the plaintiff's adult psychological injury were a separate injury giving rise to a new cause of action with its own accrual date, the plaintiff in *Shirk* would not have needed to rely upon the one-year revival period of subdivision (c) — her claim would not have accrued at all, whether as a civil action or under the government claims statute, until she became aware of her adult injury." (*Quarry v. Doe I*, *supra*, 53 Cal.4th at pp. 982-983, fn. 11.)

Thus, the logical implication of *Shirk*'s rejection of the plaintiff's alternative argument that her government claim was timely filed under the delayed discovery rule — an implication underscored by this court's later decision in *Quarry* — undermines a finding of timeliness in this case.

Moreover, the public policies behind the claim presentation requirement that we identified in *Shirk*, *supra*, 42 Cal.4th 201, apply equally here as in that case. Permitting a claim made in 2012 to suffice for molestation that allegedly occurred from 1993 to 1994 would contravene those policies. A public entity cannot plan for a fiscal year if it may be subject to an unknown and unknowable number of ancient claims like this one. It is probably too late today to meaningfully investigate the facts behind the claim and reach reliable conclusions; even if some investigation is still possible, a claim timely filed in 1993 or 1994 would certainly have been easier to investigate and would have allowed for more reliable conclusions. It is also too late to prevent the alleged abuser from abusing again.

Recent legislation in response to *Shirk*, *supra*, 42 Cal.4th 201, demonstrates that the Legislature, in amending the statutory scheme, has endeavored to take account of these policy concerns. "In direct response to *Shirk*, the Legislature enacted Government Code section 905, subdivision (m) . . . ." (*A.M. v. Ventura Unified School Dist.* (2016) 3 Cal.App.5th 1252, 1258; see Stats. 2008, ch. 383,

13

§ 1, pp. 3002-3003.) Government Code section 905 provides exceptions to the government claims requirement. The new subdivision (m) of that section added another exception: "Claims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse. This subdivision shall apply only to claims arising out of conduct occurring on or after January 1, 2009." (Gov. Code, § 905, subd. (m).) This amendment does not directly apply here. No one is arguing that the claim requirement does not apply to plaintiff at all; instead, the parties are disputing whether her claim was timely under then-existing law. But the amendment shows that the Legislature has attempted to balance the important objectives underlying the statutory scheme with practical concerns about permitting the litigation of old claims against governmental entities.

The legislative history behind the new Government Code section 905, subdivision (m), makes clear the Legislature overruled *Shirk*, *supra*, 42 Cal.4th 201, only prospectively due to fiscal considerations. A committee report explained: "This bill is intended to address the *Shirk* decision by expressly providing that childhood sexual abuse actions against public entities are exempted from the government tort claims requirements and the six-month notice requirement. It is identical to SB 1339 (Simitian), except that this bill applies prospectively only, to claims arising out of conduct occurring on or after January 1, 2009. SB 1339 passed out of the Senate Judiciary Committee unanimously, but was held in suspense in the Senate Appropriations. The change from SB 1339 should reduce the bill's financial impact on local public entities." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 640 (2007-2008 Reg. Sess.), as amended June 9, 2008, p. 3; see Sen. Rules Com., Analysis of Sen. Bill No. 640 (2007-2008 Reg. Sess.), as amended July 14, 2008, pp. 1, 3 [similar].)

14

In this way, during the calendar year 2008, the Legislature put governmental entities on notice that for conduct allegedly occurring on or after January 1, 2009, they would have to protect themselves as best they could against possible stale claims. But the Legislature also intended to protect those entities from such claims for conduct occurring before that date. This legislative intent supports our conclusion that plaintiff's 2012 claim for conduct allegedly occurring from 1993 to 1994 was untimely.

Our opinion in *Fox v. Ethicon Endo-Surgery, Inc.*, *supra*, 35 Cal.4th at page 808, listed section 340.1 as among the statutes affecting the accrual date. But the instant issue was not before us in that case, and the listing contained no analysis. Our more recent opinion in *Quarry v. Doe I*, *supra*, 53 Cal.4th 945, which, as explained, considered *Shirk*, *supra*, 42 Cal.4th 201, and aptly explained its significance, correctly described section 340.1 as "*tolling* the limitations period for the underlying claim." (*Quarry*, at p. 981, italics added.)

Plaintiff also argues that "the equitable doctrine of delayed discovery applies and warrants a finding that plaintiff's claim was timely." However, once we conclude, as we do, that section 340.1 did not establish a new accrual date, our reasons for rejecting a similar argument in *Shirk*, *supra*, 42 Cal.4th at page 214, apply here. We there explained that "it seems most unlikely" the Legislature intended to permit a late claim for someone who discovered only in 2012 "a new injury attributable to the same predicate facts underlying a cause of action previously barred by failure to comply with the government claims statute." (*Ibid*.) As we concluded in *Quarry v. Doe 1*, *supra*, 53 Cal.4th at page 984, "we do not believe the Legislature intended that common law delayed discovery principles should apply to cases governed by section 340.1."

Finally, plaintiff makes the closely related argument that her delayed adult awareness of her injury created its own cause of action with its own accrual date.

15

We disagree for similar reasons. In *Quarry v. Doe I*, *supra*, 53 Cal.4th at pages 981-983, we considered the various amendments to section 340.1. We explained that the 1990 amendment "did not treat adult psychological injury as an entirely separate and new injury." (*Quarry*, at p. 982.) Later amendments were also "inconsistent with the view that adult injury constitutes a separate and distinct injury giving rise to a new cause of action with its own limitations period." (*Ibid.*)[2]

The dissent complains that today's holding, and presumably that of *Shirk*, *supra*, 42 Cal.4th 201, effectively give public entities immunity from liability for lawsuits like this one. (Dis. opn., *post*, at p. 2.) When the Legislature amended section 340.1 without modifying the claims requirement, and later overruled *Shirk*, but only prospectively, it took measured actions that protected public entities from potential liability for stale claims regarding conduct allegedly occurring before January 1, 2009, in which the public entity had no ability to do any fiscal planning, or opportunity to investigate the matter and take remedial action.

---

[2]     *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229 erroneously concluded that section 340.1 affected the accrual date of a claim for childhood sexual abuse, and that the delayed discovery doctrine made the late claim timely. (*K.J.*, at pp. 1233, 1241-1244.) We disapprove *K.J. v. Arcadia Unified School Dist.*, *supra*, 172 Cal.App.4th 1229 to the extent it is inconsistent with this opinion.

16

For these reasons, we reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**KRUGER, J.**

**DISSENTING OPINION BY WERDEGAR, J.**

I disagree with the court's conclusion that plaintiff Rubenstein's suit is barred. The court holds her cause of action accrued when she was molested by a high school track coach, at the age of 14, and then lapsed six months later when she failed to present a claim to the school district. This reasoning, in my view, reflects a misunderstanding of Code of Civil Procedure section 340.1 (hereafter section 340.1) and its relationship to the statutes that regulate the government-claims process (Gov. Code, § 900 et seq.). I respectfully dissent.

Section 340.1 permits a victim of childhood sexual abuse to bring suit "within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later . . . ." (*Id.*, subd. (a).) The 1990 legislation that added this language to section 340.1 (Stats. 1990, ch. 1578, § 1, p. 7550) was intended to supersede *DeRose v. Carswell* (1987) 196 Cal.App.3d 1011. (See *Quarry v. Doe I* (2012) 53 Cal.4th 945, 963 (*Quarry*); Sen. Com. on Judiciary, Analysis of Sen. Bill No. 108 (1989–1990 Reg. Sess.) as amended Feb. 6, 1989, pp. 2–3 [discussing *DeRose*].) Two years earlier, the court in *DeRose* had held a claim based on sexual abuse accrued immediately based on a simplistic analogy to the law of assault, under which a touching "perceived as unconsented to and offensive . . . causes harm as a matter of law." (*DeRose*, at

p. 1018.)  *DeRose* met with harsh criticism in the Legislature, which was informed that psychological evidence showed "most victims of childhood sexual abuse either repress their memories of the abuse or are unable to appreciate their injuries until well into their adult years."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 108, *supra*, at p. 3.)  The Legislature responded by codifying the delayed discovery rule in section 340.1, in order to "recognize the need for all victims of childhood sexual abuse to be allowed a longer time period in which to become aware of . . . their psychological injuries and remain eligible to bring suit."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 108, *supra*, at p. 2; see *Quarry*, at p. 963.)

The Legislature's landmark effort to expand victims' access to the courts does not help Latrice Rubenstein, the majority reasons, because section 340.1 tolls, or suspends the running of, the statute of limitations for childhood sexual abuse claims rather than delaying those claims' accrual.  The arcane difference between tolling and delayed accrual makes little or no difference to plaintiffs who are suing private parties.  But someone suing a public entity must present a claim within six months after his or her cause of action accrues or the claim is lost. (Gov. Code, § 911.2, subd. (a).)  By construing section 340.1 as a tolling statute, while at the same time applying the deprecated rule that claims for childhood sexual abuse accrue at the time of the abuse (maj. opn., *ante*, at p. 7), the majority offers public entities the practical equivalent of immunity in the very set of cases that prompted the Legislature to amend section 340.1 — cases in which the psychological harm caused by childhood sexual abuse is first discovered in adulthood.  This result cannot fairly be attributed to the Legislature, which amended section 340.1 over the strong objection of public school districts.  (See Nancy Bourne, Breon, O'Donnell & Miller, letter to Assembly Member Phillip Isenberg, Aug. 9, 1989 ["The burden on a defendant such as a public school

2

teacher to prove he/she did not commit child abuse 30 years after the fact is insurmountable."]; see also Nancy Bourne, Breon, O'Donnell, Miller, Brown & Dannis, letter to all Assembly Members, May 2, 1990 [same].)

Section 340.1 is most naturally read as delaying the accrual of claims for sexual abuse rather than tolling the statute of limitations. The section sets "the time for commencement of the action" by reference to "the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse . . . ." (*Id.*, subd. (a).) This is the language of delayed discovery—the " 'most important' " exception to the ordinary rule that a " 'cause of action ordinarily accrues when . . . the wrongful act is done and the obligation or liability arises . . . .' " (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1257, quoting 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 493, p. 633, and § 497, p. 635.) The delayed discovery rule " 'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.' " (*Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 634, quoting *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807 (*Fox*).)

The legislative history of Code of Civil Procedure section 340.1 clearly and repeatedly describes the statute as intended to delay accrual and not to toll the statute of limitations. Multiple legislative committee reports explained the bill "*would expressly provide for delayed discovery accrual . . . .*" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 108, *supra*, at p. 2, as amended Feb. 6, 1989, italics added; see Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 108 (1989–1990 Reg. Sess.) March 31, 1989, p. 1 [same]; Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 108 (1989–1990 Reg. Sess.) Aug. 20, 1990, p. 2 [same].) An enrolled bill report provided to the Governor before he signed the legislation also describes the proposed legislation as

3

"provid[ing] for delayed discovery accrual . . . ."  (Cal. Off. of Crim. Justice Planning, Enrolled Bill Rep. on Sen. Bill No. 108 (1989–1990 Reg. Sess.) prepared for Governor Deukmejian (Aug. 28, 1990) p. 1; see *id.*, at p. 2 [same].)  One may infer the Legislature appreciated the distinction between delayed accrual and tolling because the proposed legislation was described as "expressly provid[ing] for *delayed discovery accrual*," while then-existing law (Code Civ. Proc., § 352) was described as "*toll*[*ing*] statutes of limitations during a plaintiff's minority."  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 108, *supra*, at p. 2, italics added.)  In the entire legislative history, only a single sentence in a single report uses the language of tolling to describe the effect of the proposed amendment to section 340.1.  (Assem. Com. on Judiciary, Rep. on Sen. Bill No. 108 (1989–1990 Reg. Sess.) as amended Aug. 21, 1989, p. 6 [under the proposed amendment to section 340.1, "the running of the statute of limitation could be tolled indefinitely"].)  But this report does not mention or reject the commonly expressed understanding that the amendment would in fact delay accrual.

Various public policies affecting the government claims process play a strong role in the majority's analysis.  (See maj. opn., *ante*, at p. 13–15; cf. *id.*, at pp. 4–5.)  Those policies logically inform our interpretation of the statutes that regulate the claims process.  (See Gov. Code, § 900 et seq.)  But the same policies do not logically or legitimately inform the interpretation of generally applicable statutes of limitations such as section 340.1.  This is because the Legislature has declared that the date on which a claim accrues, for purposes of the claims process, "is the date upon which the cause of action would be deemed to have accrued within the meaning of the statute of limitations which would be applicable thereto *if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon*."  (Gov. Code, § 901, italics added.)  To construe section 340.1 as tolling the statute of limitations instead of

4

delaying its accrual—*in order to serve the policies underlying the claims process*—is inconsistent with the Legislature's decision to allow generally applicable law to determine the date of accrual. (Gov. Code, § 901.) In other words, section 901 expressly disallows accrual rules that are specific to the government claims process, such as the majority's novel pronouncement that section 901 refers to accrual " 'in the ripeness sense.' " (Maj. opn., *ante*, at p. 11.)

The majority makes the same mistake by invoking Government Code section 905, subdivision (m), as support for its interpretation of section 340.1. (See maj. opn., *ante*, at pp. 13–15.) Section 905 categorically exempts plaintiffs who sue public entities for childhood sexual abuse from the need to submit claims. Because this law applies "only to claims arising out of conduct occurring on or after January 1, 2009" (Gov. Code, § 905, subd. (m)), the majority describes the amendment as showing a legislative concern about the financial impact on governmental entities of older claims like that of plaintiff Rubenstein. (See Maj. opn., *ante*, at pp. 13–14.) The Legislature is presumably always concerned with the public treasury. But despite that proper concern, the Legislature has not modified the statutory rule that claims accrue against public entities at the same time they would accrue as "*if there were no requirement that a claim be presented . . . .*" (Gov. Code, § 901, italics added.) Accordingly, the only reasonable interpretation of section 905, subdivision (m), is that it does not affect the accrual of claims based on pre-1990 conduct. (See *City of Pasadena v. Superior Court* (2017) 12 Cal.App.5th 1340, 1352 ["Nor did the Legislature address the date of accrual for such claims."].) Instead, the timing of accrual is left to generally applicable law, in this case section 340.1.

No controlling precedent supports the court's interpretation of section 340.1. The case law that does exist offers more opposition to, than support for, that interpretation. In *Fox*, *supra*, 35 Cal.4th 797, 808, albeit in dictum, we described

5

section 340.1 as "making accrual of a cause of action contingent on when a party discovered or should have discovered that his or her injury had a wrongful cause." (Italics omitted.) Not in dictum, the Court of Appeal in *K.J. v. Arcadia Unified School Dist.* (2009) 172 Cal.App.4th 1229, 1241–1243, held that section 340.1 delays the accrual of claims for childhood sexual abuse until the plaintiff discovers that adult psychological injury was caused by childhood sexual abuse. The majority summarily disapproves that adverse precedent in a footnote (maj. opn., *ante*, at p. 16, fn. 2) and relies instead on *V.C. v. Los Angeles Unified School Dist.* (2006) 139 Cal.App.4th 499. But *V.C.*, like the majority, commits the error of interpreting section 340.1 through the lens of the government claims process. *V.C.* ultimately depends on the premise that to read section 340.1 as delaying accrual would in effect "override" (*V.C.*, at p. 511) or "carve out an exception to the claims requirements." (*V.C.*, at p. 512.) This method of analysis is illegitimate, as I have explained (*ante*, at pp. 2–3), given the Legislature's decision to apply generally applicable law to determine when a cause of action accrues for the purpose of a claim against the government. (See Gov. Code, § 901.)

The remaining decisions on which the majority relies provide no meaningful support for their conclusion. Neither *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201 (*Shirk*), nor *Quarry*, *supra*, 53 Cal.4th 945, decided whether section 340.1 is properly interpreted as tolling, or as delaying the accrual of, claims for childhood sexual abuse. And *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127 (*Hamilton*), interpreted a statute of limitations (Code Civ. Proc., § 340.2) that is critically different than section 340.1.

In *Shirk*, *supra*, 42 Cal.4th 201, the plaintiff conceded her cause of action for sexual abuse committed by a high school teacher between 1977 and 1979 had been extinguished by her failure to present a claim in 1980. (*Id.* at p. 210.) In view of this concession, the question before the court was whether a 2002 amendment to

6

section 340.1 (see Stats. 2002, ch. 149, § 1, p. 753 [adding § 340.1, subd. (c)]) had revived her claim. The amended statute revived only those causes of action that were barred "*solely because the applicable statute of limitations has or had expired*" (§ 340.1, subd. (c), italics added) as of January 1, 2003. We held the statute did not revive the plaintiff's claim because it was "not barred 'solely' by lapse of the applicable statute of limitations" (*Shirk*, at p. 213), but also because she had not presented a timely claim to the school district (*ibid.*). The plaintiff made the alternative argument that her claim first accrued when she learned the abuse had caused adult psychological harm. (*Id.* at p. 214.) The court did not dispose of that argument by interpreting 340.1 as tolling, rather than delaying the accrual, of claims. Instead, the court simply reiterated its earlier conclusion that the 2002 amendment had not revived plaintiff's already extinguished claim. (*Ibid.*)

Our decision in *Quarry*, *supra*, 53 Cal.4th 945, also concerned the 2002 revival statute. (§ 340.1, subd. (c).) The court held the plaintiff's claims against a church for sexual molestation committed by a priest were not revived because the plaintiffs had failed to bring their action within the one-year period prescribed by the revival statute. Arguing against this conclusion, the plaintiffs' asserted "their adult psychological injuries were so separate from the original childhood injuries that *a new claim accrued* when they discovered the connection between their adult injuries and the childhood abuse" and that, in consequence, they "had no need for the revival of their previously barred claims." (*Quarry*, at p. 981, italics added.) We rejected the argument because "[t]here [was] no indication in [section 340.1] that the Legislature viewed adult psychological injury caused by childhood abuse as a new and separate injury giving rise to a new cause of action with its own accrual and limitations period." (*Quarry*, at p. 982.) This holding sheds no light on the case before us. Plaintiff Rubenstein does not argue that her present claim,

7

which includes damages for adult psychological harm, is separate from her claim for the childhood molestation.  Instead, she argues she has a single claim for all injuries caused by sexual molestation, and that section 340.1 delayed its accrual.

The majority tries to find some guidance in *Quarry*'s treatment of *Shirk*, *supra*, 42 Cal.4th 201.  (See maj. opn., *ante*, at pp. 12–13.)  But in the passage on which the majority relies, the *Quarry* court went no farther than to hold, once again, that a claim for adult psychological injuries caused by childhood sexual abuse is not separate from a claim based on the assault itself.[1]  *Quarry* did not hold that section 340.1 tolls the statute of limitations, rather than delaying accrual, until adult harm is discovered.  That question was not before the court.

The majority makes much of a single sentence in *Quarry*, *supra*, 53 Cal.4th 945, noting the 1990 amendment to section 340.1 was intended "to recognize that a delayed awareness that adult psychological injury was caused by childhood abuse would justify *tolling* the limitations period for the underlying claim against the perpetrator."  (*Quarry*, at p. 981, italics added, quoted in maj. opn., *ante*, at p. 15.)  But this sentence cannot fairly be understood to reject, even in dictum, the argument that section 340.1 provides for delayed discovery accrual, as the Legislature intended.  Instead, the sentence provides context for the sentences that immediately follow, wherein the court again reiterates its *holding* that "the

---

**1**    See *Quarry*, *supra*, 53 Cal.4th at pages 982–983, footnote 11:  "We also observe that *if adult psychological injury were a separate injury* giving rise to a cause of action accruing upon discovery of the connection between the adult injury and childhood abuse, presumably *Shirk* should have been litigated and resolved differently. . . . [*I*]*f the plaintiff's adult psychological injury were a separate injury* giving rise to a new cause of action with its own accrual date, the plaintiff in *Shirk* would not have needed to rely upon the one-year revival period of subdivision (c)—her claim would not have accrued at all, whether as a civil action or under the government claims statute, until she became aware of her adult injury."  (Italics added.)

8

amendment did not treat adult psychological injury as an entirely separate and new injury. Rather, the new language [of section 340.1] was intended to afford victims a longer period in which to become aware of their injuries." (*Quarry*, at p. 982.) The *Quarry* court also described the 1990 amendment consistently with its legislative history as creating a "statutory delayed discovery rule" that would supersede *DeRose*, *supra*, 196 Cal.App.3d 1011. (*Quarry*, at p. 983.)

Finally the majority relies on *Hamilton*, *supra*, 22 Cal.4th 1127. (See maj. opn., *ante*, at pp. 10–12.) But *Hamilton* had nothing to do with section 340.1. *Hamilton* construed Code of Civil Procedure section 340.2, subdivision (a), which provides that, "[i]n any civil action for injury or illness based upon exposure to asbestos, the time for the commencement of the action" is "[w]ithin one year after the date the plaintiff first suffered disability" or "either knew, or through the exercise of reasonable diligence should have known, that such disability was caused or contributed to by such exposure." As the *Hamilton* court explained, the "intent of the Legislature in enacting section 340.2 . . . was . . . to provide a special statute of limitations for asbestos-related illnesses consistent with the fact that such slowly developing occupational diseases typically become symptomatic long before they become disabling, at least in the sense of disabling their victims from continuing to do their regular job." (*Hamilton*, at p. 1139.) Given the purpose of the statute, the court construed it as declaring a "date for the beginning of the limitations period in asbestos cases" that was "separate and distinct" (*id.* at pp. 1144–1145) from the date on which the claim accrued. In other words, while "the filing of an action for asbestos-related injury may be said . . . to be an 'admission' that the cause of action has accrued in the ripeness sense, it is *not* an admission that the limitations period of section 340.2 has simultaneously begun." (*Hamilton*, at p. 1145.)

The majority asserts that section 340.2 is similar to section 340.1. (Maj. opn., *ante*, at p. 11.) Not so. The Legislature expressly limited the application of section 340.2 "*to those causes of action which accrued prior to the change in the law*" brought about by the enactment of section 340.2. (Stats. 1979, ch. 513, § 2, p. 1690, italics added.) This uncodified statute made the holding in *Hamilton*, *supra*, 22 Cal.4th 1127, unavoidable: The court could effectuate the purpose of section 340.2 only by extending the limitations period for claims that had, by definition already accrued. To interpret the statute as delaying the accrual of those claims was not an option. In this critical respect, section 340.1 differs from section 340.2. In 1990, when the Legislature amended section 340.1 to set "the time for commencement of the action" by reference to "the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse" (*id*., subd. (a)), the Legislature did not limit the amended statute's application to claims that had already accrued, as it did with section 340.2. More importantly, as already discussed (*ante*, at pp. 4–5), the Legislature understood the 1990 amendment "*would expressly provide for delayed discovery accrual . . . .*" (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 108, *supra*, at p. 2, italics added.)

In conclusion, I urge the Legislature to read today's decision and determine for itself whether the majority's holding accurately reflects the intended meaning and purpose of section 340.1. " 'Statutes of limitation are products of legislative authority and control' " (*Valley Circle Estates v. VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 615) and should reflect the Legislature's policy goals rather than those of the judicial branch. Prior judicial decisions unduly restricting sexual abuse victims' access to the courts have repeatedly led the Legislature to amend

10

both section 340.1 and the claims statutes.[2]  This case suggests section 340.1 may require further clarification.

---

[2]     See *Quarry*, *supra*, 53 Cal.4th at pages 963–964 (noting the 1990 and 1994 amendments to section 340.1 superseded *DeRose v. Carswell*, *supra*, 196 Cal.App.3d 1011, and *David A. v. Superior Court* (1993) 20 Cal.App.4th 281); *City of Pasadena v. Superior Court, supra,* 12 Cal.App.5th 1340,1352 (noting Gov. Code, § 905, subd. (m), superseded *Shirk*, *supra*, 42 Cal.4th 201).  See also *Quarry*, at pages 1002–1003 (dis. opn. of Liu, J.).

For all of these reasons I respectfully dissent.

**WERDEGAR, J.**

**WE CONCUR:**

**LIU, J.**
**CUÉLLAR, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Rubenstein v. Doe No. 1
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 245 Cal.App.4th 1037
**Rehearing Granted**

_____

**Opinion No.** S234269
**Date Filed:** August 28, 2017
_____

**Court:** Superior
**County:** Imperial
**Judge:** Juan Ulloa

_____

**Counsel:**

Law Offices of Elliot N. Kanter, Elliott N. Kanter; Esner, Chang & Boyer, Holly N. Boyer and Shea S. Murphy for Plaintiff and Appellant.

Family Violence & Sexual Assault Institute and Institute on Violence, Abuse & Trauma as Amici Curiae on behalf of Plaintiff and Appellant.

Daley & Heft, Lee H. Roistacher, Richard J. Schneider, Reece A Roman; Jackson Lewis, Leila Nourani, Sherry L. Swieca and Douglas M. Egbert for Defendants and Respondents.

Leone & Alberts, Louis A. Leone and Seth L. Gordon for Northern California Regional Liability Excess Fund, Southern California Regional Liability Excess Fund, Statewide Association of Community Colleges and School Association for Excess Risk as Amici Curiae on behalf of Defendants and Respondents.

Jennifer B. Henning for California State Association of Counties and League of California Cities as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Holly N. Boyer
Esner, Chang & Boyer
234 East Colorado Boulevard, Suite 975
Pasadena, CA  91101
(626) 535-9860

Lee H. Roistacher
Daley & Heft
462 Stevens Avenue Suite 201
Solana Beach, CA  92075
(858) 755-5666

Seth L. Gordon
Leone & Alberts
2175 N. California Boulevard, Suite 900
Walnut Creek, CA  94596
(925) 974-8600