Filed 3/12/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| E.D. COATS et al., <br><br> Plaintiffs and Appellants, <br> v. <br> NEW HAVEN UNIFIED SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | A150490 <br><br> (Alameda County <br> Super. Ct. No. RG16820158) |

Appellants E.D. Coats and her foster mother, Tinella B. Coats sued the New Haven Unified School District and others alleging that E.D. had been sexually abused by one of her high school teachers. The trial court entered judgment on the pleadings due to appellants' failure to comply with the Government Claims Act prior to filing suit. Appellants contend the action was not properly subject to a claim presentation requirement.

As we will explain, due to amendments of the controlling statutes enacted during the pendency of this appeal, we will reverse the judgment as to E.D.'s causes of action and remand for further proceedings. As to Coats's causes of action, we will affirm the judgment.

**BACKGROUND**

According to the allegations of the complaint, in the spring of 2014, when E.D. was 17 years old and a junior in high school, one of her teachers began "grooming" her and then engaging in sexual intercourse and oral sex with her in locations including his classroom and his car in the school

1

parking lot. The situation was discovered in January 2015, after the school's alarm system was triggered during a vacation, when no one should have been inside, and a representative of the alarm monitoring company heard what sounded like two people engaging in sexual intercourse. A representative sent to campus was met at the door by the teacher, who refused to let him in and said his wife was inside; the teacher was then observed leaving with a young woman later identified as E.D. The teacher admitted engaging in sexual intercourse with E.D. 10 to 20 times while she was a minor and pled no contest to one count of felony unlawful sexual intercourse with a minor (Pen. Code, § 261.5, subd. (d).) The school principal had previously disciplined the teacher for inappropriate contact with a student on at least one occasion, but the conduct had not been reported to any authorities and no steps had been taken to monitor the teacher's contact with other female students.

On June 20, 2016, appellants filed a complaint for personal injuries and damages against the New Haven Unified School District (District), the school principal, the teacher, and others. E.D. alleged causes of action against the teacher for sexual abuse (first cause of action), against the other defendants for negligence and breach of statutory duties in failing to adequately supervise teachers and protect students (second and third causes of action), and against all the defendants for intentional and negligent infliction of emotional distress (fourth and fifth causes of action). Coats joined in the claims of intentional and negligent infliction of emotional distress.

Appellants alleged that they were not required to present a claim to the District under the Government Claims Act (Gov. Code, § 810 et seq.)[1] due to

---

[1] Further statutory references will be to the Government Code except as otherwise specified.

the exemption for claims of sexual abuse of a minor stated in section 905, subdivision (m).  The District and the principal, respondents here, moved for judgment on the pleadings as to the second through fifth causes of action, arguing that notwithstanding section 905, subdivision (m), E.D. was required to present a claim to the District pursuant to a District regulation adopted under the authority of section 935, and that the section 905, subdivision (m), exemption did not apply to Coats because she was not an abused minor.

The trial agreed with respondents, granted the motion and dismissed the complaint with respect to all claims against the District and the principal.  Judgment was entered on January 3, 2017, and this appeal followed.

## DISCUSSION

### I.

Under the Government Claims Act, personal injury claims against public entities generally must be presented to the entity within six months of accrual of the injury.  (*A.M. v. Ventura Unified School Dist.* (2016) 3 Cal.App.5th 1252, 1257.)  Absent an applicable exception, "failure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239; §§ 911.2, 945.4.)  Section 905 enumerates a number of exceptions to the claims requirement, including "[c]laims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse" arising out of conduct occurring on or after January 1, 2009.  (§ 905, subd. (m).)

At the time appellants filed this action, Code of Civil Procedure section 340.1 allowed an action for damages resulting from childhood sexual abuse to be commenced "within eight years of the date the plaintiff attains the age of

3

majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later."

The section 905, subdivision (m), exception undisputedly applies to E.D.'s claims.  Pursuant to section 935, however, local entities may prescribe claims presentation requirements, subject to specified restrictions, for claims "which are excepted by Section 905" and "are not governed by any other statutes or regulations expressly relating thereto."[2]  The District's board

---

[2] When this action was filed, section 935 provided:

"(a) Claims against a local public entity for money or damages which are excepted by Section 905 from Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part, and which are not governed by any other statutes or regulations expressly relating thereto, shall be governed by the procedure prescribed in any charter, ordinance or regulation adopted by the local public entity.

(b) The procedure so prescribed may include a requirement that a claim be presented and acted upon as a prerequisite to suit thereon. If such requirement is included, any action brought against the public entity on the claim shall be subject to the provisions of Section 945.6 and Section 946.

(c) The procedure so prescribed may not require a shorter time for presentation of any claim than the time provided in Section 911.2.

(d) The procedure so prescribed may not provide a longer time for the board to take action upon any claim than the time provided in Section 912.4.

(e) When a claim required by the procedure to be presented within a period of less than one year after the accrual of the cause of action is not presented within the required time, an application may be made to the public entity for leave to present such claim. Subdivision (b) of Section 911.4, Sections 911.6 to 912.2, inclusive, and Sections 946.4 and 946.6 are applicable to all such claims, and the time specified in the charter, ordinance or regulation shall be deemed the 'time specified in Section 911.2' within the meaning of Sections 911.6 and 946.6."

4

policy 3320 provides, "Any and all claims for money or damages against the district must be presented to and acted upon in accordance with Board policy and administrative regulation. Compliance with district procedures is a prerequisite to any court action . . . ." The District's administrative regulation for board policy 3320 provides, "Claims for money or damages specifically excepted from Government Code [section] 905 shall be filed no later than six months after the accrual of the cause of action."

In concluding appellants' suit was barred by their failure to comply with the District's claims presentation requirement, the trial court rejected appellants' argument that the District's policy and regulation " 'circumvent the express intention of the legislature' " in section 905, subdivision (m), to exempt victims of childhood sexual abuse from government claims presentation requirements. The trial court reasoned that the other subdivisions of section 905 are subject to section 935, and the Legislature did not indicate that subdivision (m), should be treated differently. The court also rejected appellants' argument that section 935 does not authorize the local regulation because it only applies to claims "not governed by any other statutes or regulations expressly relating thereto" and claims under section 905, subdivision (m), are "governed by" Code of Civil Procedure section 340.1. The court followed cases holding that the reference in section 935 to "other statutes or regulation expressly relating thereto" was to statutes prescribing procedures for filing a claim against the public entity (*Tapia v. County of San Bernardino* (1994) 29 Cal.App.4th 375, 384; *California School Employees Assn. v. Azusa Unified School Dist.* (1984) 152 Cal.App.3d 580, 587, fn. 3).

---

A 2018 amendment adding an additional subdivision to the statute will be discussed *post*.

Appellants' appeal challenged these determinations. Prior to the enactment of subdivision (m) of section 905, the California Supreme Court held in *Shirk v. Vista Unified School Dist.* (2007) 42 Cal.4th 201, 212–214 (*Shirk*), that despite an amendment to Code of Civil Procedure section 340.1 reviving certain claims of childhood sexual abuse that previously had been barred due to expiration of the statute of limitations, the plaintiff's suit was precluded by her failure to present a timely claim to the entity under the Government Claims Act. Subdivision (m) was added to section 905 in 2008, in direct response to *Shirk*. (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 914 (*Rubenstein*); *A.M. v. Ventura Unified School Dist., supra,* 3 Cal.App.5th at p. 1258; Assem. Comm. on Judiciary, Analysis of Sen. Bill No. 640 (2007-2008 Reg. Sess.) as amended June 9, 2008 ["This bill is intended to address the Shirk decision by expressly providing that childhood sexual abuse actions against public entities are exempted from government tort claims requirements and the six-month notice requirement."].) The legislative history, noting that Code of Civil Procedure section "340.1's delayed discovery provisions recognize" that "[f]or many victims, the emotional and psychological trauma from childhood sexual abuse does not manifest itself until well into adulthood," states the intention "to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from those responsible, whether those responsible are private or public entities." (Assem. Comm. on Judiciary, Analysis of Sen. Bill No. 640 (2007-2008 Reg. Sess.) as amended June 9, 2008 [author's statement].) Appellants argue that allowing a local ordinance to impose a six-month claims filing requirement violates the clear legislative intent of section 905, subdivision (m), to allow victims asserting claims of childhood sexual abuse against

6

governmental entities the same time within which to do so as victims of private actors.

Respondent's brief relies on a series of cases considering the interplay between sections 905 and 935, culminating in the Fifth District Court of Appeal's since-vacated decision in *Big Oak Flat-Groveland Unified School Dist. v. Superior Court* (2018) 21 Cal.App.5th 403 (*Big Oak Flat*). *Big Oak Flat,* decided while this appeal was pending, was the first, and to our knowledge remains the only, case to specifically consider the interplay between section 935 and *subdivision (m)* of section 905. It held that section 935 authorized adoption of local claims requirements for claims excepted by section 905, subdivision (m), rejecting arguments similar to appellants' in the trial court and here.

The California Supreme Court granted review of *Big Oak Flat* in June 2018 (S247975), and we granted appellants' unopposed request to stay briefing on this appeal pending the court's decision. At the time, only appellants' reply brief was outstanding.

In July 2018, the Legislature adopted Senate Bill No. 1053, which amended section 935 by adding a new subdivision (f): "Any procedure authorized to be prescribed by this section does not apply to claims of childhood sexual abuse made as described in subdivision (m) of Section 905. This subdivision is declaratory of existing law."

On July 17, 2019, the California Supreme Court transferred *Big Oak Flat* to the Fifth Appellate District Court of Appeal "with directions to vacate its decision and reconsider the cause in light of the enactment of Statutes 2018, chapter 1053 (Sen. Bill No. 1053 (2017-2018 Reg. Sess.)). (Cf. *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922–923 & 930;

7

*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 244.) (Cal. Rules of Court, rule 8.528(d).)"

Appellants' subsequently filed reply brief on the present appeal argues that Senate Bill No. 1053 demonstrates the Legislature never intended section 935 to permit imposition of local claims presentation requirements on claims of childhood sexual abuse as described in section 905, subdivision (m). Respondent filed a supplemental brief contesting appellant's arguments, and appellant filed a supplemental reply brief.

Then, on October 13, 2019, Assembly Bill No. 218 (Assembly Bill 218) was signed into law. Assembly Bill 218 significantly amended Code of Civil Procedure section 340.1. Among other things, it lengthened the time within which an action for damages resulting from "childhood sexual assault"[3] must be brought to 22 years from the date the plaintiff attains the age of majority or five years from date the plaintiff "discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual assault" (Code Civ. Proc., § 340.1, subd. (a)); it added a provision for recovery of treble damages from "a defendant who is found to have covered up the sexual assault of a minor" (*Id.*, subd. (b)); and it raised to 40 years the age for cut-off of a plaintiff's ability to sue third party defendants (*Id.*, subd. (c).)

Two of the subdivisions added by Assembly Bill 218 are of direct relevance here. Subdivision (q) provides: "Notwithstanding any other provision of law, any claim for damages described in paragraphs (1) through (3), inclusive, of subdivision (a) that has not been litigated to finality and that

---

[3] The amended statute replaces the term childhood sexual "abuse" with childhood sexual "assault" but maintains the same definition of the included conduct. (Compare Code Civ. Proc., § 340.1, subdivision (e), as amended, with section 340.1, subdivision (e), prior to Assem. Bill 218.)

would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, claim presentation deadline, or any other time limit had expired, is revived, and these claims may be commenced within three years of January 1, 2020. A plaintiff shall have the later of the three-year time period under this subdivision or the time period under subdivision (a) as amended by the act that added this subdivision. Subdivision (r) of the amended section 340.1, Code of Civil Procedure provides: "The changes made to the time period under subdivision (a) as amended by the act that amended this subdivision in 2019 apply to and revive any action commenced on or after the date of enactment of that act, and to any action filed before the date of enactment, and still pending on that date, including any action or causes of action that would have been barred by the laws in effect before the date of enactment."

In addition to the changes to Code of Civil Procedure section 340.1, Assembly Bill 218 amended section 905 by deleting from subdivision (m) the language that previously limited this exception to the government claim presentation requirement to claims arising out of conduct occurring on or after January 1, 2009, and adding subdivision (p), which made this change retroactive.[4]

In a supplemental letter brief filed in November 2019, appellants argue that Assembly Bill 218 effectively moots the previously presented issues in this case because even if the action was previously barred by the failure to

---

[4] Subdivision (p) of section 905 provides: "The changes made to this section by the act that added this subdivision are retroactive and apply to any action commenced on or after the date of enactment of that act, and to any action filed before the date of enactment and still pending on that date, including any action or causes of action that would have been barred by the laws in effect before the date of enactment."

9

timely file a claim with the District, it is now revived pursuant to Code of Civil Procedure section 340.1, subdivisions (q) and (r).

The District responds that Assembly Bill 218 raises serious constitutional issues in that it "imposes liability and sanctions of a punitive nature for conduct that was not previously actionable" and thereby "runs afoul of the constitutional prohibition against ex post facto laws (U.S. Const. art. I, § 10, cl. 1; Cal. Const., art. I, § 9) and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the California counterpart."[5]

As the District acknowledges, "[t]he constitutional prohibition on ex post facto laws usually applies to criminal statutes." (*Massachusetts v. Schering-Plough Corp.* (D. Mass. 2011) 779 F.Supp.2d 224, 233 (*Schering-Plough Corp.*).) Legislation reviving the statute of limitations on civil law claims does not violate constitutional principles (*Roman Catholic Bishop of Oakland v. Superior Court* (2005) 128 Cal.App.4th 1155, 1161 (*Bishop of Oakland*); *Liebig v. Superior Court* (1989) 209 Cal.App.3d 828, 831–834.) As the District's cases illustrate, "a civil statute may violate the Ex Post Facto Clause if it is ' "so punitive either in purpose or effect as to negate [the State's] intention' to deem it "civil." ' " (*Schering-Plough Corp.,* at p. 233, quoting *Kansas v. Hendricks* (1997) 521 U.S. 346, 361.) "Only the 'clearest proof' will suffice to override the Legislature's stated intent and render a nominally civil statute penal for ex post facto purposes. [Citation.]" (*21st Century Insurance Co. v. Superior Court* (2005) 127 Cal.App.4th 1351, 1362, quoting *Smith v. Doe* (2003) 538 U.S. 84, 92)

---

[5] The District initially offered the additional argument that it would be improper for us to base a decision on a law that had not yet taken effect. That point is no longer relevant due to the passage of time, as Assembly Bill 218 became effective on January 1, 2020.

The District directs our attention to several cases finding that laws "containing similar provisions" violated the ex post facto clause or refusing to apply laws retroactively because of ex post facto concerns. (*Landgraf v. USI Film Products* (1994) 511 U.S. 244, 281 (*Landgraf*); *Schering-Plough Corp., supra,* 779 F.Supp.2d at p. 237; *Louis Vuitton S.A. v. Spencer Handbags Corp.* (2d Cir. 1985) 165 F.2d 966, 971–972.) *Landgraf* addressed a section of the Civil Rights Act of 1991 creating a right to recover compensatory and punitive damages for intentional discrimination in violation of title VII of the Civil Rights Act of 1964; previously, only equitable relief had been available for a title VII violation. In holding the new provision did not apply to a case pending on appeal at the time of enactment, the court explained there was no clear evidence of congressional intent to apply it to cases arising before it was enacted, "[r]etroactive imposition of punitive damages would raise a serious constitutional question" and even retroactive application of the provision for compensatory damages would impose a "new disability" on employers. (*Landgraf,* at pp. 281, 283–284.) In *Schering-Plough Corp.*, the state sought to apply a provision of the Massachusetts False Claims Act (MFCA) that increased penalties and damages (including trebled damages) above the amount available under prior law in a case involving conduct that preceded enactment of the statute. Despite an unambiguous statement of legislative intent that the statute apply retroactively, the court held such application would violate the ex post facto clause and, therefore, the defendants' liability for conduct predating the new law was governed by the law in effect prior to the MFCA. (*Schering-Plough Corp.*, at pp. 233–238.) In *Louis Vuitton*, the plaintiffs in a trademark infringement case asked the trial court to amend its judgment by applying the damages provision of a new statute, enacted days before the start of trial, that made mandatory what had previously been a

11

discretionary treble damages award.  The court interpreted the provision as applying only prospectively in order to avoid potential constitutional ex post facto and due process issues.  (*Louis Vuitton,* at pp. 971–972)

In each of these cases, the court was asked to apply a statutory provision increasing the amount of damages available for acts committed prior to the provisions' enactment.  Here, however, the treble damages provision added to Code of Civil Procedure section 340.1, subdivision (b), is not at issue, as appellants did not allege any cover-up that could trigger the provision.  The only question before us on this appeal is whether appellants' suit is barred by their failure to timely file a claim with the District under its administrative regulation for board policy 3320.  The constitutionality of retroactive application of the new treble damages provision has no bearing on whether Assembly Bill 218 successfully revived cases that have "not been litigated to finality" and "would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, claim presentation deadline, or any other time limit had expired." (Code Civ. Proc., § 340.1, subd. (q).)  The District does *not* argue that the *claim revival* provisions of Assembly Bill 218 could be construed as punitive for ex post facto purposes under the seven-factor analysis courts employ to make this determination.  (*Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168–169; *Bishop of Oakland, supra,* 128 Cal.App.4th at pp. 1162–1163.)  Its contention that six of the seven factors "weigh in favor of a finding of unconstitutionality," is directed at the treble damages provision.

Additionally, an ex post facto argument quite similar to the District's was rejected in *Bishop of Oakland, supra,* 128 Cal.App.4th 1155, which considered a 2002 amendment to Code of Civil Procedure section 340.1 providing a one-year revival period for claims of liability for failure to take

12

reasonable steps to prevent childhood sexual abuse that had expired under the prior statute of limitations. In a suit filed during this revival window, the court held that allowing the plaintiff to seek punitive damages would not violate the ex post facto clause. The court rejected the defendant's reliance upon *Landgraf, supra,* 511 U.S. 244, for the proposition that punitive damages are criminal in nature because the *Landgraf* court's comments on this point were dicta, as its ex post facto concerns were discussed in analyzing whether the Legislature intended the law to operate retroactively, not whether the law in fact violated the ex post facto clause. (*Bishop of Oakland,* at pp. 1163–1164.)

Furthermore, the *Bishop of Oakland* court explained, "to the extent ex post facto concerns were implicated by *Landgraf*, they are substantially different from those at issue here. *Landgraf* did not concern a common law tort claim. Instead, it concerned the retroactive application of a new *statutory* punitive damage remedy to preexisting conduct which occurred at a time when no such damages were recoverable. This distinction animated the *Landgraf* court's analysis: 'In cases like this one, in which prior law afforded no relief, [the new law] can be seen as creating a new cause of action, and its impact on parties' rights is especially pronounced.' ([*Landgraf, supra,* 511 U.S.] at p. 284.) As a result, the new statute resembled 'a statute increasing the amount of damages available under a preestablished cause of action.' (*Id.* at [pp. 284–285].) Neither *Landgraf* nor the cases it cites concerned or considered the ability to recover punitive damages as part of a statute reviving a time-lapsed common law tort cause of action. (*See Usery v. Turner Elkhorn Mining Co.* (1976) 428 U.S. 1, [award of benefits under federal Coal Mining Health and Safety Act]; *De Veau v. Braisted* (1960) 363 U.S. 144 [New York State Waterfront Commission Act precluding convicted felons from

13

collecting or receiving union dues]; *Louis Vuitton S.A. v. Spencer Handbags Corp.*[, *supra*,] 765 F.2d 966 [treble civil damages under criminal trademark counterfeiting law].)

"At issue here, however, is the revival of a lapsed civil limitations period in order to restore common law remedies that actually existed at the time of the alleged misconduct. As noted, numerous federal and California decisions have held that there is no constitutional impediment to such legislation. In light of those decisions, and in the absence of any such issues or discussion in *Landgraf*, we do not believe *Landgraf* can be read as having any applicability here. Instead, as we explain below, we hold that a statute reviving the limitations period for a common law tort cause of action, thereby allowing the plaintiff to seek punitive damages, does not implicate the ex post facto doctrine and therefore does not trigger the intent-effects test at all." (*Bishop of Oakland, supra,* 128 Cal.App.4th at p. 1164, fn. omitted.) The court then went on to discuss caselaw underlying its conclusion that "[n]o reported decision of any federal or state court has ever held that punitive damages awarded pursuant to a common law tort claim might constitute criminal punishment under the ex post facto clause. Our courts and others have held just the opposite." (*Id.* at p. 1165.)

Putting aside the issue of punitive damages, as noted in *Bishop of Oakland, supra,* 128 Cal.App.4th at pages 1161–1162, an earlier case had rejected a constitutional challenge to the revival of previously time-barred causes of action in the original version of Code of Civil Procedure section 340.1. (*Liebig v. Superior Court, supra,* 209 Cal.App.3d at pp. 830–831.) The 1986 statute "expressly revive[d] time-barred causes of action," applying the new three-year period to actions that would have been barred by the limitations period prior to the January 1, 1987, effective date of the statute as

14

well as to pending actions. (*Liebig,* at p. 831.) *Liebig* explained: "[T]he Legislature has the power to expressly revive time-barred civil common law causes of action. This holding is consistent with the niche in our civil law occupied by statutes of limitations. 'The principle is . . . well established that "[s]tatutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff's rights. . . ." [Citation.] [T]here is a "strong public policy that litigation be disposed of on the merits wherever possible." ' (*Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 56–57, quoting *Sevilla v. Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611, and *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 724.)" (*Liebig,* at p. 835.)

The present case, of course, involves revival of a cause of action barred by a claim presentation requirement, not a statute of limitations. But we are aware of no reason the Legislature should be any less able to revive claims in this context, as it expressly did in Assembly Bill 218: "Notwithstanding any other provision of law, any claim for damages described in paragraphs (1) through (3), inclusive, of subdivision (a) that has not been litigated to finality and that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, *claim presentation deadline*, or any other time limit had expired, is revived, and these claims may be commenced within three years of January 1, 2020." (§ 340.1, subd. (q), italics added.)

The express inclusion of "claim presentation deadline[s]" in Assembly Bill 218 distinguishes it from the 2002 amendment to Code of Civil Procedure section 340.1, which revived claims "that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired. . . ." (Stats. 2002, ch. 149, § 1.) That revival provision, our Supreme Court held, did not alter the bar imposed by a plaintiff's failure to

15

file a claim with the public entity defendant: " '[T]he government Claim presentation deadline is not a statute of limitations. Had the Legislature intended to also revive in subdivision (c) the claim presentation deadline under the government claims statute, it could have easily said so. It did not.' " (*Rubenstein, supra,* 3 Cal.5th at p. 907, quoting *Shirk, supra,* 42 Cal.4th at p. 213.) In Assembly Bill 218, the Legislature made clear its intent to revive causes of action previously barred by government claims presentation requirements.

*Rubenstein* noted that the claim presentation requirement " 'is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers.' " (*Rubenstein, supra,* 3 Cal.5th at p. 908, quoting *Shirk, supra,* 42 Cal.4th at p. 213.)[6] In that case, the plaintiff argued that the claim she filed with a

---

[6] *Rubenstein* described the " 'public policies underlying the claim presentation requirement of the government claims statute. Requiring a person allegedly harmed by a public entity to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others. [Citations.] The requisite timely claim presentation before commencing a lawsuit also permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.]' " (*Rubenstein, supra,* 3 Cal.5th at pp. 907–908, quoting *Shirk*, *supra*, 42 Cal.4th at p. 213.) " ' "The claims statutes also 'enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.' " ' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 991; see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 [similar]; *Perez v. Golden Empire Transit*

public entity defendant in 2012, when she became aware of memories of sexual abuse by her public school athletic coach 1993–1994, was timely. Accepting the plaintiff's argument that her claim accrued when she became aware of the past abuse, the court said, would contravene the policies underlying the claim presentation requirement: "A public entity cannot plan for a fiscal year if it may be subject to an unknown and unknowable number of ancient claims like this one. It is probably too late today to meaningfully investigate the facts behind the claim and reach reliable conclusions; even if some investigation is still possible, a claim timely filed in 1993 or 1994 would certainly have been easier to investigate and would have allowed for more reliable conclusions. It is also too late to prevent the alleged abuser from abusing again." (*Rubenstein,* at p. 914.)

The *Rubenstein* court observed that in responding to *Shirk* by adding subdivision (m) to section 905, the Legislature had "endeavored to take account of these policy concerns," creating the exception to the claims requirement for childhood sexual abuse cases but making it prospective only. (*Rubenstein, supra,* 3 Cal.5th at p. 914.) "[T]he amendment shows that the Legislature has attempted to balance the important objectives underlying the statutory scheme with practical concerns about permitting the litigation of old claims against governmental entities." (*Ibid.*)

In Assembly Bill 218, the Legislature has again attempted to balance the competing concerns of protecting public entities from stale claims and allowing victims of childhood sexual abuse to seek compensation. This time, the Legislature came a different conclusion, with an express revival provision for claims against public entities as well as those against private defendants.

---

*Dist.* (2012) 209 Cal.App.4th 1228, 1234, 147 [summarizing these policy considerations].)" (*Rubenstein,* at p. 908.)

17

The District attempts to cast doubt upon the constitutionality of retroactive application of the legislation by pointing to the magnitude of the changes it makes, not only adding the previously discussed provision for treble damages in cases of cover-up of childhood sexual abuse but extending the statute of limitations 14 years longer than under prior law (to 22 years after the age of majority), reviving claims that have not been litigated to finality for a three-year period regardless of when the abuse allegedly occurred ("even if the abuse allegedly occurred 100 years ago"), and eliminating the protection section 905, subdivision (m), previously provided for claims arising from conduct that occurred prior to 2009. None of these changes are implicated in the present case. As we have said, there are no allegations to trigger the treble damages provision. Appellants' suit was filed when E.D. was 19 years old, well within the prior statute of limitations (eight years from age of majority). The alleged abuse last occurred only a year and a half prior to the filing of the complaint, far from the "100 years ago" invoked by the District in characterizing the amendment. And the case involves alleged abuse in 2014 and 2015, not prior to 2009. The District offers no reason for finding the claim revival provisions of Assembly Bill 218 unconstitutional.

In light of the express revival provision in subdivision (q) of Code of Civil Procedure section 340.1, it is not necessary for us to determine the merits of appellants' argument that the trial court erred in finding the District's claim presentation requirement was valid under section 935 despite the exception for childhood sexual abuse claims stated in section 905, subdivision (m), either due to the legislative intent reflected in section 905, subdivision (m), itself or as clarified by Senate Bill No. 1053's addition of the exception to section 935 for claims of childhood sexual abuse. It is apparent from the history of amendments to these statutes, however, that the

18

Legislature has consistently worked to expand the ability of victims of childhood sexual abuse to seek compensation from the responsible parties,

on several occasions in direct response to restrictive judicial opinions.[7]  In the face of a revival provision expressly and unequivocally encompassing

[7] In addition to the statutory amendments we have described, Code of Civil Procedure section 340.1 had previously been amended several times.  As enacted in 1986, section 340.1 extended the statute of limitations for a claim of sexual molestation of a child to three years from the age of majority; previously, the statute of limitations for such a claim would have been one year from the age of majority.  (*Liebig v. Superior Court, supra,* 209 Cal.App.3d at pp. 830–831.)  The statute "expressly revive[d] time-barred causes of action," applying the new three-year period to actions that would have been barred by the prior limitations period, as well as to pending actions.  (*Id.* at p. 831.)

In 1990, the Legislature extended the statute of limitations for claims of childhood sexual abuse to eight years from the date of the plaintiff's majority or three years from the date of discovery that "psychological injury or illness occurring after the age of majority was caused by the sexual abuse." (Stats. 1990, ch. 1578, § 1.)  The legislation stated, "The amendments to this section enacted at the 1990 portion of the 1989–90 Regular Session shall apply to any action commenced on or after January 1, 1991."  (*Id.*, § 1, subd. (k).)  In 1994, responding to a court decision holding the 1990 amendment did not indicate legislative intent to revive causes of action which had lapsed under prior law (*David A. v. Superior Court* (1993) 20 Cal.App.4th 281, 286; *Quarry v. Doe I* (2012) 53 Cal.4th 945, 964), the Legislature added subdivisions (o) and (p), expressly reviving such causes of action in cases commenced on or after January 1, 1991.

Amendments in 1998 distinguished between actions against a person for committing an act of childhood sexual abuse and actions to impose liability on third parties whose conduct was a legal cause of the abuse, with the latter required to be commenced by the plaintiff's 26th birthday.  (Stats. 1998, ch. 1032, § 1, subds. (a), (b).)  An amendment a year later stated that the 1998 amendments applied to actions commenced on or after January 1, 1999, and previously filed actions still pending on that date, "including any action or causes of action which would have been barred by the laws in effect prior to January 1, 1999," but did not revive causes of action that had been finally adjudicated prior to January 1, 1999."  (Stats. 1999, ch. 120, § 1, subd. (s).)

Amendments in 2002 extended the time for commencing third-party actions beyond the plaintiff's 26th birthday in specified circumstances and

20

claims of childhood sexual abuse previously barred for failure to present a timely government claim, it is clear we must reverse the trial court's judgment and remand for further proceedings on appellants' complaint.

## II.

The above analysis would apply equally to Coats's claims of emotional distress if, as appellants maintain, these claims were also subject to the exception of section 905, subdivision (m). The exception, as we have said, applies to "[c]laims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual assault." Appellants argue Coats's claims come within the exception because she suffered emotional distress "as a result of" the "childhood sexual assault" of her foster daughter. The District argues section 905, subdivision (m), is inapplicable because Coats was not a victim of childhood sexual assault.

The trial court, without further explanation, held subdivision (m) of section 905 did not apply to Coats because she was "not making a '[c]laim . . . pursuant to Section 340.1 . . . for the recovery of damages suffered as a result of childhood sexual abuse.' "

In appellants' view, since the purpose of Code of Civil Procedure section 340.1 is to allow a victim of childhood sexual abuse sufficient time to recognize and reveal his or her injury, it would make no sense to subject a parent's claims arising from the child's abuse to a six-month government claims presentation requirement. Appellants cite *A.M. v. Ventura Unified School Dist., supra,* 3 Cal.App.5th at page 1256, as "noting that despite its plain language, claims under section 340.1 could be asserted by a guardian

___

expressly revived such claims "that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired" for a period of one year. (Stats. 2002, ch. 149, § 1, subds. (b)(2), (c).)

ad litem for the child." In that case, a mother, as guardian ad litem for her minor daughter, sued the school district and others for alleged negligence in allowing male students to sexually abuse the daughter at school. The trial court granted summary judgment for the defendants because no government tort claim had been filed with the District. *A.M.* reversed, finding the daughter's claims exempt from the claim filing requirement under section 905, subdivision (m). The case is not helpful to appellants with respect to Coats's causes of action, however, because the only claim in *A.M.* brought by the mother *on her own behalf* (negligent infliction of emotional distress) was voluntarily dismissed prior to the trial court's summary judgment.

Appellants' contention that Government Code section 905, subdivision (m), applies to Coats's emotional distress claims turns on whether they are claims "made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual assault." The plain language of Code of Civil Procedure section 340.1 demonstrates it is aimed at direct victims of sexual assault. Subdivision (a) of the statute begins, "In an action for recovery of damages suffered as a result of childhood sexual assault, the time for commencement of the action shall be within 22 years of the date the *plaintiff* attains the age of majority or within five years of the date the *plaintiff* discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual assault . . . ." (Code Civ. Proc., § 340.1, subd. (a), italics added.) Subdivision (d) defines childhood sexual assault by reference to specified acts "committed against the *plaintiff* that occurred when the plaintiff was under the age of 18 years." (*Id.*, subd. (d), italics added.) A plaintiff 40 years of age or older at the time the action is filed must file a certificate of merit by a mental health practitioner providing a "professional opinion there is a

22

reasonable basis to believe that the *plaintiff* had been a subject to childhood sexual abuse." (*Id.*, subds. (f), (g)(2), italics added.) Clearly, the statute prescribes the time within which a plaintiff who was the subject of sexual assault as a minor may bring an action for damages against the perpetrator or parties whose conduct was a legal cause of the sexual assault. The statute does not expressly address actions for damages suffered by third parties "as a result" of a child's sexual assault.

Subdivision (m) of Government Code section 905 tracks the language of Code of Civil Procedure section 340.1: The exception is for claims "made pursuant to Section 340.1 of the Code of Civil Procedure *for the recovery of damages suffered as a result of childhood sexual assault*." (Italics added.) Since the exception to the claims presentation requirement is for claims "made pursuant to Section 340.1 of the Code of Civil Procedure," which governs actions "for recovery of damages suffered as a result of childhood sexual assault" by the victim of the assault, it seems apparent that the "as a result of childhood sexual assault" language in section 905, subdivision (m), refers to damages suffered by the victim, not causes of action alleging *indirect* injury suffered by a third person due to a child having been sexually assaulted. We are not aware of anything in the legislative history of section 905, subdivision (m), or Assembly Bill 218 suggesting the Legislature intended the childhood sexual abuse exception to the government claims presentation requirement to apply to causes of action asserted by a party other than the victim of the childhood sexual abuse.

Appellants make a reasonable argument that it would be incongruous to require a parent's action for emotional distress resulting from childhood sexual abuse of his or her child to be filed within six months of the abuse when the law recognizes that the child may not reveal and/or become aware

of the significance of such abuse until years later. But this argument assumes the Legislature intended parents or other third parties to be able to recover damages from public entities for the emotional distress they suffer upon learning the victim was sexually abused. The incongruity would exist only to the extent appellants' assumption is warranted.

Appellants point to *Phyllis P. v. Superior Court* (1986) 183 Cal.App.3d 1193 (*Phyllis P.*), which permitted a mother to assert claims for emotional distress against school authorities arising out of the sexual assault and rape of her young daughter by another student. The child had reported incidents of molestation to her teacher, but the teacher and school counselor decided not to tell the mother about the molestation or counseling that was provided to the child; the principal warned the offending student his parents would be notified if he did not stop "bothering" the child but also did not notify the victim's mother. (*Id.* at p. 1195.) Ultimately, the child was raped. The mother claimed she could have taken precautionary measures if she had been informed of the earlier assaults and suffered severe emotional distress as a result of the defendants' failure to notify her, due to the rape and her observation of her daughter's physical and psychological deterioration. (*Ibid.*) The court concluded the school defendants had a special relationship with and duty of care to the mother in these circumstances, failed to properly supervise the perpetrator or protect the child, and withheld information about the earlier assaults from the mother, preventing her from taking precautions, amounting to a cover-up the defendants should have foreseen would cause the mother more emotional distress than informing her of the molestation in the first place. (*Id.* at pp. 1196–1197.)[8]

---

[8] *Steven F. v. Anaheim Union High School Dist.* (2003) 112 Cal.App.4th 904 (*Steven F.*) noted that *Phyllis P.* was decided on a foreseeability theory subsequently repudiated in *Burgess v. Superior Court* (1992) 2 Cal.4th 1064,

On the other hand, *Steven F., supra,* 112 Cal.App.4th 904, reversed a jury verdict in favor of parents on their cause of action for emotional distress upon learning their daughter had engaged in a sexual relationship with one of her high school teachers. The daughter had tried to hide the relationship from her parents, begged them not to go to the police when they found out, and became suicidal after the teacher was arrested. (*Id.* at p. 906.) There was no evidence the school defendants knew of the sexual relationship or of any prior tendency on the part of the teacher to have sex with students. (*Id.* at pp. 907, 909.) *Steven F.* distinguished *Phyllis P.* factually, as the school authorities in that case were aware of the propensity and danger posed by the perpetrator and intentionally chose to keep information from the mother, thereby "preempt[ing]" or "usurp[ing]" the "parental prerogative to take measures to protect the child." (*Steven F.,* at pp. 914–915.) The *Steven F.* court considered several theories of recovery discussed in cases involving third party emotional distress claims and concluded none supported recovery on the facts of that case. (*Id.* at pp. 911–919.)

For present purposes, it is not necessary for us to determine where the present case would fall as a factual matter.[9] These cases illustrate that parents have not been seen by the courts as *necessarily* entitled to recover for emotional distress when their children have a direct claim of sexual abuse.

---

1074, but viewed the decision as supported by cases allowing recovery for negligent infliction of emotional distress by third party relatives where the relative is a "direct victim" in that the negligence was "directed at" the relative or there was "outrageous conduct on the part of the defendant." (*Steven F.,* at pp. 912–913.)

[9] Given its ruling that Coats's claims were barred by her failure to file a timely claim with the District, the trial court did not consider whether she sufficiently alleged a special relationship with the District to support her causes of action for emotional distress.

Absent discernable legislative intent, we cannot conclude the Legislature intended to provide relatives the same rights as direct victims in the context of childhood sexual abuse cases under Code of Civil Procedure section 340.1. Given the policy underpinnings of the Government Claims Act, it would require an even greater stretch to conclude the Legislature intended the section 905, subdivision (m), exception to the claims presentation requirement to apply to relatives' claims.

Accordingly, we agree with the trial court that Coats's causes of action are barred by her failure to file a timely claim with the District.

## DISPOSITION

The judgment is affirmed as to Coats. As to E.D., the judgment is reversed and the matter remanded for further proceedings consistent with this opinion.

_____
                                        Kline, P.J.


We concur:


_____
Richman, J.


_____
Stewart, J.


*E.D. Coats et al. v. New Haven Unified School District et al.* (A150490)

Trial Court:                            Alameda County Superior Court

Trial Judge:                           Hon. Robert B. Freedman


Attorneys for Appellants:        Taylor & Ring
                                         John C. Taylor
                                         Natalie Weatherford

                                         Esner, Chang & Boyer
                                         Holly N. Boyer
                                         Joseph S. Persoff

                                         Haysbert Moultrie
                                         Nazareth M. Haysbert

Attorneys for Respondents:      Leone & Alberts
                                         Louis A. Leone
                                         Katherine Alberts
                                         Marina B. Pitts
                                         Seth L. Gordon