Filed 9/29/25  Doe v. North Monterey County Unified School Dist. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JANE DOE, | H052095 |
| Plaintiff and Appellant, | (Monterey County Super. Ct. No. 22CV003767) |
| v. | |
| NORTH MONTEREY COUNTY UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

In the early 2000's, plaintiff Jane Doe was allegedly sexually abused by her high school teacher, who was employed by defendant North Monterey County Unified School District.  Doe did not comply with the government claim presentation requirement in effect at the time, which required her to timely present a claim for damages to the school district as a condition precedent to bringing a lawsuit against it.

Nearly two decades later, Assembly Bill No. 218 (2019-2020 Reg. Sess.) (Assembly Bill 218) was enacted.  (Stats. 2019, ch. 861.)  Effective January 1, 2020, Assembly Bill 218 (1) extended the statute of limitations for childhood sexual assault claims, (2) revived such claims that had previously been barred due to the statute of limitations or government claim presentation deadline, and (3) retroactively eliminated the claim presentation requirement for such claims.  (Code Civ. Proc., § 340.1, former

subds. (a) & (q),[1] as amended by Stats. 2019, ch. 861, § 1; Gov. Code, § 905, subds. (m) & (p), as amended by Stats. 2019, ch. 861, § 3.)

In 2022, Doe, who was then in her 30's, sued the school district, alleging various tort claims related to the sexual abuse. The school district moved for judgment on the pleadings, contending that Doe failed to comply with the government claim presentation requirement in effect at the time of the alleged abuse. The school district also argued that Assembly Bill 218's retroactive elimination of the claim presentation requirement for childhood sexual abuse claims was an unconstitutional gift in violation of article XVI, section 6 of the California Constitution (the gift clause). The trial court agreed and granted the school district's motion. Judgment was filed in favor of the school district.

On appeal, Doe contends that Assembly Bill 218's revival of previously time barred claims and retroactive elimination of the government claim presentation requirement is not an unconstitutional gift because it does not create new liability. Instead, it simply removes a barrier to the enforcement of liability against a public entity. She also argues that Assembly Bill 218 serves a public purpose, which precludes a finding that the gift clause has been violated. In support of these arguments, Doe cites *West Contra Costa Unified School Dist. v. Superior Court* (2024) 103 Cal.App.5th 1243 (*West Contra Costa*), which was filed after judgment was entered in favor of the school district in the instant case. The appellate court in *West Contra Costa* determined that Assembly Bill 218 did not violate the gift clause.

For reasons that we will explain, we agree with the conclusion in *West Contra Costa* that Assembly Bill 218 does not violate the gift clause. We also reject the school district's newly raised argument that Assembly Bill 218 violated the school district's due

---

[1] Unspecified statutory references are to the Code of Civil Procedure unless otherwise indicated.

process rights.  We will reverse the judgment and direct the trial court to enter a new order denying the school district's motion for judgment on the pleadings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Complaint*

Doe filed a civil complaint on December 2, 2022.  In a first amended complaint, she alleged that when she was a high school student, she was sexually assaulted by a teacher from approximately 2002 to 2003.  Doe alleged that the school district knew or should have known that the teacher was unfit to teach and ignored signs that the teacher was "engaged in an inappropriate and harassing, sexual relationship with" Doe.  Years later, the school district and law enforcement were notified about the alleged sexual abuse.  According to Doe, the school district investigated the allegations but ultimately cleared the teacher to return to work.  Doe alleged that the teacher was later arrested in connection with the sexual abuse of Doe and other victims.

In the amended complaint, Doe alleged three causes of action against the school district:  (1) negligent hiring, supervision, and retention; (2) breach of mandatory duty by failing to report suspected child abuse; and (3) negligent supervision of a minor.[2]  She alleged that her claims were governed by section 340.1 and Government Code section 905, subdivision (m), and that she was not required to present a government tort claim to the school district.

### B.  *School District's Motion for Judgment on the Pleadings*

The school district filed a motion for judgment on the pleadings.  The school district contended that Assembly Bill 218 was unconstitutional with respect to public entities because the legislation retroactively eliminated the government claim presentation requirement for childhood sexual abuse claims and thereby constituted a gift

---

[2] Doe alleged additional causes of action against others, including against her former teacher.  None of these defendants is a party to this appeal.

3

in violation of article XVI, section 6 of the California Constitution. The school district argued that public entities have immunity under the Government Claims Act (Gov. Code, § 810 et seq.), and immunity is waived only if the requirements of the Government Claims Act are satisfied. According to the school district, Doe never complied with the claim presentation requirement, so sovereign immunity was a complete bar to her claims. However, Assembly Bill 218 operated to "force local public entities to be liable for claims which were legally barred," and this appropriation "constitutes an unconstitutional gift of public funds." The school district further argued that if a legal claim was unenforceable, then no public purpose would be served by the Legislature allowing liability for such a claim. In support of its motion, the school district requested judicial notice of legislative history material regarding Assembly Bill 218 and a superior court's order in an unrelated case.

### C. *Doe's Opposition*

Doe filed opposition to the school district's motion. She contended that there was no gift of public funds because there was no appropriation of money or creation of new liability. Instead, she "had a valid and enforceable claim at the time of the abuse and [Assembly Bill] 218 merely revived her ability to bring this lawsuit by removing the government claim presentation requirement." Doe argued that she must still prove her claim in court. She further contended that the Legislature could allocate public funds for a public purpose, and that the public purpose of Assembly Bill 218 was to allow more childhood sexual assault victims to be compensated for their injuries. Doe requested judicial notice of legislative history materials regarding Assembly Bill 218. She also objected to the school district's request for judicial notice of a superior court order in another case.

### D. *School District's Reply*

In reply, the school district contended that presenting a government claim is a substantive element of a cause of action against a public entity. Because Doe never

4

complied with the requirements of the Government Claims Act, Doe did not have an enforceable claim against the school district, which had immunity, prior to the passage of Assembly Bill 218. Consequently, according to the school district, "a law authorizing her to seek payment for her unenforceable claim ([Assembly Bill] 218) is a violation" of the gift clause. The school district requested judicial notice of an additional superior court order in another unrelated case.

### E. *Trial Court's Order*

After a hearing, the trial court granted the school district's motion for judgment on the pleadings. In a written order, the court found that Doe did not allege that she had satisfied the claim presentation requirement. The court determined that the deadline for Doe to file a government claim had expired before Assembly Bill 218 eliminated the government claim presentation requirement. Because the claim presentation requirement was an element of Doe's cause of action, the court found that Doe did not have an enforceable claim by the time the law changed. The court determined that the Legislature did not have the "power to impose liability on a public entity where, prior to the passage of the law, the plaintiff had no enforceable claim." The court believed that the Legislature's "attempt to revive an invalid claim constitute[d] a 'gift' in violation" of the gift clause. The court further determined that the Legislature's intent, which was to permit more childhood sexual abuse victims to be compensated for their injuries, was not a valid public purpose under the California Constitution's gift clause.

The trial court also granted the parties' requests for judicial notice. Regarding the grant of judicial notice of orders in other cases, the court stated that those orders were "not considered as precedential authority but [did] allow the Court to see the reasoning of other courts."

Judgment was entered in favor of the school district.

## II. DISCUSSION

Doe contends that Assembly Bill 218's revival of previously time barred claims and retroactive elimination of the government claim presentation requirement is not an unconstitutional gift because it does not create new liability. Instead, Assembly Bill 218 simply removed a barrier to the enforcement of liability against a public entity. She also argues that Assembly Bill 218 serves a public purpose, which precludes a finding that the gift clause has been violated.

The school district contends that compliance with the government claim presentation requirement is an element of a cause of action against a public entity. Because Doe did not comply with this requirement after her claims against the school district accrued, her claims were barred prior to the enactment of Assembly Bill 218. The school district argues that Assembly Bill 218 eliminated a substantive element of a cause of action against a public entity and created liability where none previously existed. According to the school district, "the Legislature attempted to appropriate public money to pay for both the defense" against allegations of childhood sexual abuse "and all potential judgments for those claims despite the fact that, at the time the law was passed, it was legally impossible for these potential plaintiffs to establish any prima facie claim. This constitutes a gift of public funds." The school district further argues that "the retroactive imposition of liability on public entities for previously unenforceable claims serves no public purpose as a matter of law." Lastly, the school district raises a new argument in this court that Assembly Bill 218 violates the school district's state and federal due process rights by "resurrecting extinguished claims."

In reply, Doe contends that the school district lacks standing to assert a due process claim and that the claim also fails on the merits.

We first address Doe's request for judicial notice. We then turn to questions of whether Assembly Bill 218 violates the gift clause or violates due process.

6

**A.** *Doe's Request for Judicial Notice*

Doe requests judicial notice of orders or rulings addressing the constitutionality of Assembly Bill 218 in 66 other unrelated superior court cases.  Doe states that she "does not cite these orders for precedential purpose, but rather . . . to demonstrate the current landscape across California – where numerous public entities have filed . . . unsuccessful constitutional challenges to" Assembly Bill 218.

We deny Doe's request for judicial notice.  As Doe recognizes, these superior court orders and rulings in unrelated cases have "no precedential value" and are "not citable authority." (*Aixtron, Inc. v. Veeco Instruments Inc*. (2020) 52 Cal.App.5th 360, 399; see also *People v. Webster* (1991) 54 Cal.3d 411, 428, fn. 4 [request for judicial notice should not be used to "circumvent[]" the rule against relying on unpublished opinions].)  Further, the "current legal landscape across California," as characterized by Doe and as purportedly reflected in these superior court orders, "is not relevant to the resolution of any legal issue presented here.  We decline to take judicial notice of these materials." (*In re Nolan W*. (2009) 45 Cal.4th 1217, 1226, fn. 3.)

**B.** *Whether Assembly Bill 218 Violates the Constitutional Prohibition Against a Gift of Public Funds*

### 1.  General Legal Principles

#### a.  Statute of limitations for childhood sexual abuse claims

The Code of Civil Procedure provides that civil actions must be commenced within the periods prescribed by statute after the cause of action has accrued.  (*Shirk v. Vista Unified School Dist*. (2007) 42 Cal.4th 201, 212 (*Shirk*).)  " ' "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'  [Citations.]" ' " (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 911 (*Rubenstein*).)  "A cause of action for childhood sexual molestation generally accrues at the time of the alleged molestation.  [Citation.]" (*Id.* at p. 910.)

7

"Section 340.1 governs the period within which a plaintiff must bring a tort claim based upon childhood sexual abuse." (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 952 (*Quarry*).) "Code of Civil Procedure Section 340.1 is, for the most part, a statute of limitations." (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 777 (*Los Angeles Unified*).) " '[A] statute of limitations grants prospective defendants relief from the burdens of indefinite exposure to stale claims.' " (*Quarry*, *supra*, at p. 952.)

Since the original enactment of section 340.1, "the statute has been amended on multiple occasions to extend the filing periods for claims alleging childhood sexual assault and revive otherwise time-barred claims." (*Quarry*, *supra*, 53 Cal.4th at p. 952.) The California Supreme Court has previously "described 'the intent that illuminates section 340.1 as a whole' as an aim 'to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries.' [Citation.]" (*Los Angeles Unified*, *supra*, 14 Cal.5th at p. 777.)

Assembly Bill 218 amended section 340.1 by "extend[ing] the time for filing claims for childhood sexual assault [citation] and creat[ing] a revival window for lapsed claims [citation] . . . ." (*Los Angeles Unified*, *supra*, 14 Cal.5th at p. 777.) The amendment provided that an action for damages suffered as a result of childhood sexual assault may be commenced "within 22 years of the date the plaintiff attains the age of majority," that is, 40 years old. (Stats. 2019, ch. 861, § 1; § 340.1, former subd. (a).)[3]

---

[3] Specifically, as amended by the enactment of Assembly Bill 218, section 340.1, former subdivision (a) stated: "In an action for recovery of damages suffered as a result of childhood sexual assault, the time for commencement of the action shall be within 22 years of the date the plaintiff attains the age of majority or within five years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual assault, whichever period expires later . . . ." (Stats. 2019, ch. 861, § 1.)

Section 340.1, subdivision (a) currently provides that there is "no time limit" for commencing an action for damages suffered as a result of a childhood sexual assault.

The amendment also provided that a claim "that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, *claim presentation deadline*, or any other time limit had expired, *is revived . . . .*" (Stats. 2019, ch. 861, § 1, italics added; § 340.1, former subd. (q).)[4]  As indicated in italics, and as we shall next explain, Assembly Bill 218's revival window for lapsed claims resulted in "relief from the claim presentation deadlines within the Government Claims Act.  [Citation.]" (*Los Angeles Unified*, *supra*, at p. 777.)

### b. Government claim presentation requirement for childhood sexual abuse claims against a local public entity

The Government Claims Act (Gov. Code, § 810 et seq.) " 'established a standardized procedure for bringing claims against local governmental entities.' [Citations.]" (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 618-619.)  "As a general rule, a plaintiff must present a public entity with a timely written claim for damages before filing suit against it." [Citation.]" (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 652 (*J.M.*).)

" 'Requiring a person allegedly harmed by a public entity to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to

---

This elimination of the time limit for commencing an action applies to childhood sexual assaults occurring on or after January 1, 2024.  (*Id.*, subd. (p).)

[4] Specifically, as amended by the enactment of Assembly Bill 218, section 340.1, former subdivision (q) provided that a claim for damages for childhood sexual assault "that has not been litigated to finality and that would otherwise be barred as of January 1, 2020, because the applicable statute of limitations, claim presentation deadline, or any other time limit had expired, is revived, and these claims may be commenced within three years of January 1, 2020.  A plaintiff shall have the later of the three-year time period under this subdivision or the time period under subdivision (a) as amended by the act that added this subdivision." (Stats. 2019, ch. 861, § 1.)

Section 340.1, subdivision (q) now provides that a claim for damages for childhood sexual assault "is not required to be presented to any government entity prior to the commencement of an action."

others. [Citations.] The requisite timely claim presentation before commencing a lawsuit . . . permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.]' " (*Rubenstein*, *supra*, 3 Cal.5th at p. 908.) The claims statutes also " 'provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] . . . The claims statutes also 'enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.' [Citations.]" (*Stockton*, *supra*, 42 Cal.4th at p. 738.) " 'The notice requirement under the government claims statute thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because unlike nonpublic defendants, public entities whose acts or omissions are alleged to have caused harm will incur costs that must ultimately be borne by the taxpayers.' [Citation.]" (*Rubenstein*, *supra*, at p. 908.)

"Claims for personal injury and property damage must be presented within six months after accrual . . . . ([Gov. Code,] § 911.2.)"[5] (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738 (*Stockton*).) " 'Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants. [Citation.]' [Citation.]" (*Rubenstein*, *supra*, 3 Cal.5th at p. 906.)

" '[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.' [Citation.]" (*Stockton*, *supra*, 42 Cal.4th at p. 738.) In other words, "[c]ompliance with the claim requirement is a

---

[5] The Government Claims Act provides a procedure by which a person may seek leave to file a late claim under specified circumstances, including provisions specific to a minor seeking leave to file a late claim. (See, e.g., *J.M.*, *supra*, 2 Cal.5th at pp. 652-653, 655-656.) None of the parties contends that Doe sought leave to file a late claim or that the late claim procedure is relevant to the issues in this appeal.

10

condition precedent to suing the public entity. 'Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action.' [Citation.]" (*Rubenstein*, *supra*, 3 Cal.5th at p. 906.)

"[T]he government claim presentation deadline is not a statute of limitations." (*Shirk*, *supra*, 42 Cal.4th at p. 213.) In contrast, "*after a claim presented to the government* has been rejected," "[t]he deadline for *filing a lawsuit* against a public entity, as set out in the government claims statute, is a true statute of limitations defining the time in which" "the plaintiff must file a complaint alleging a cause of action based on the facts set out in the denied claim. [Citations.]" (*Id.* at p. 209.)

"Government Code section 905 provides exceptions to the government claims requirement" for claims against local public entities. (*Rubenstein*, *supra*, 3 Cal.5th at p. 914.) After legislation was passed in 2008, Government Code section 905 excluded from the government claims requirement " '[c]laims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse," but only as to " 'claims arising out of conduct occurring on or after January 1, 2009.' [Citation.]"[6] (*Rubenstein*, *supra*, at p. 914, quoting Gov. Code § 905, former subd. (m); see Stats. 2008, ch. 383, § 1.) The Legislature intended the exemption from the government claims requirement for childhood sexual abuse claims to operate "only prospectively due to fiscal considerations," specifically the " 'financial impact on local public entities.' " (*Rubenstein*, *supra*, at p. 914.)

Relevant here, Assembly Bill 218 removed from Government Code section 905, subdivision (m) the limitation that the childhood sexual abuse must occur in 2009 or later

---

[6] In *Coats v. New Haven Unified School Dist*. (2020) 46 Cal.App.5th 415 (*Coats*), the appellate court rejected a school district's contention that the amendment eliminating the claim presentation requirement for conduct occurring on or after January 1, 2009 violated due process or the prohibition against ex post facto laws. (*Id.* at pp. 424-431.)

11

in order for a claim arising out of the abuse to be exempt from the government claims requirement.  (Gov. Code, § 905, subd. (m), as amended by Stats. 2019, ch. 861, § 3.)  Thus, effective January 1, 2020, Government Code section 905 provides an exception from the government claims requirement for "[c]laims made pursuant to Section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual assault" without any date restriction regarding when the assault must have occurred.  (Gov. Code, § 905, subd. (m), as amended by Stats. 2019, ch. 861, § 3; see *Coats*, *supra*, 46 Cal.App.5th at p. 424, fn. 5.)  Further, the Legislature expressly provided in Government Code section 905 that this change was "retroactive and appl[ied] to any action commenced on or after the date of enactment" of Assembly Bill 218.  (Gov. Code § 905, subd. (p), as amended by Stats. 2019, ch. 861, § 3; see *Coats*, *supra*, at p. 424, fn. 5.)

### c. Constitutional prohibition against gifts of public funds

The California Constitution states that "[t]he Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever . . . ."  (Cal. Const., art. XVI, § 6; see *id.*, former art. IV, § 31.)  The gift clause prohibits "all appropriations of public money for which there is no authority or enforceable claim, or which perchance may rest upon some moral or equitable obligation.  [Citation.].)"  (*Allied Architects' Assn. v. Payne* (1923) 192 Cal. 431, 439 [discussing Cal. Const., former art. IV, § 31]; accord, *Westly v. U.S. Bancorp* (2003) 114 Cal.App.4th 577, 582.)  For example, in *Chapman v. State* (1894) 104 Cal. 690 (*Chapman*), the California Supreme Court held that under the gift clause, the Legislature "has no power to *create* a liability against the state for any such past act . . . upon the part of its officers."  (*Id.* at p. 693 [discussing Cal. Const., former art. IV, § 31].)  On the other hand, the Legislature may give "an additional remedy for the enforcement" of liability that already exists.  (*Id.* at p. 696.)

12

As explained by the California Supreme Court, the gift clause "denied to the legislature the right to make direct appropriations to individuals from general considerations of charity or gratitude, or because of some supposed moral obligation resting upon the people of the state . . . .  It was because of abuses which had crept into legislation by reason of the unlimited power theretofore exercised by the legislature in determining what individual claims should be recognized by private statute, and to relieve in some degree legislators from the importunities of persons interested in securing such appropriations, that the power of the legislature was thus limited by the present constitution of this state."  (*Stevenson v. Colgan* (1891) 91 Cal. 649, 651 [discussing Cal. Const., former art. IV, § 31].)

"However, 'expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning . . . of the Constitution if those funds are expended for a *public purpose . . . .*'  [Citation.]"  (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 225.)  The public purpose doctrine requires that "a direct and substantial public purpose is served and nonstate entities are benefited only as an incident to the public purpose.  [Citations.]"  (*California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 583 (*California Housing Finance Agency*).)  "[T]he benefit to the state from an expenditure for a public purpose is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom.  [Citations.]"  (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 745-746 (*County of Alameda*).)

"The determination of what constitutes a public purpose is primarily a matter for the Legislature, and its discretion will not be disturbed by the courts so long as that determination has a reasonable basis.  [Citations.]"  (*County of Alameda*, *supra*, 5 Cal.3d at p. 746.)  "[L]egislative findings . . . are given great weight and will be upheld unless they are found to be unreasonable and arbitrary.  [Citations.]"  (*California Housing Finance Agency*, *supra*, 17 Cal.3d at p. 583.)  "But '[t]he failure to explicitly state a

13

public purpose is not decisive. The courts may infer the public purpose from other legislation or the manner in which the legislation is enacted.' [Citation.]" (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1257.)

### d. Standard of review

" 'A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' [Citation.]" (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) " 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] . . . 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law . . . .' [Citation.] Courts may consider judicially noticeable matters in the motion as well. [Citation.]" (*Ibid.*)

When the issue of the constitutionality of a statute presents a question of law, we review the matter de novo. (*Persky v. Bushey* (2018) 21 Cal.App.5th 810, 817-818.) " ' "[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears." ' [Citation.]" (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780.)

### e. *West Contra Costa Unified School Dist. v. Superior Court* (2024) 103 Cal.App.5th 1243

In *West Contra Costa*, the appellate court held that Assembly Bill 218's "waiver of the claim presentation requirement did not constitute an expenditure of public funds that may be considered a 'gift.' " (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1252.) The appellate court reached this conclusion for two reasons.

First, the appellate court explained that the defendant school district's "substantive liability for the alleged sexual assaults [by a high school counselor against a former

14

student] exist[ed] independently of the claim presentation requirement." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1264.) Assembly Bill 218, in waiving the government claim presentation requirement, "did not create new 'substantive liability' [citation] for the underlying alleged wrongful conduct[, that is, new tort liability for the alleged sexual abuse]. Instead, Assembly Bill 218 simply waived a condition the state had imposed on its consent to suit[, that is, the claim presentation requirement]. [Citations.]" (*West Contra Costa*, *supra*, at p. 1257.) The appellate court reasoned that because the "claims presentation requirement [was] not part of the [defendant school district's] substantive liability, . . . retroactive waiver of the requirement [did] not 'create any liability or cause of action against the state where none existed before.' (*Chapman*, *supra*, 104 Cal. at p. 696.)" (*Id.* at pp. 1259-1260.) Therefore, "no 'gift' occurred when the Legislature waived the claim presentation requirement with respect to alleged conduct for which the [school district] was indisputably substantively liable when it happened." (*Id.* at p. 1264.)

Second, the appellate court in *West Contra Costa* determined that, even if "Assembly Bill 218 authorizes expenditures within the scope of the gift clause, the expenditures are not 'gifts' because they serve a public purpose." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1265.) In this regard, the appellate court observed that " ' "the intent that illuminates section 340.1 as a whole" ' and Assembly Bill 218 in particular is 'an aim "to expand the ability of victims of childhood sexual abuse to hold to account individuals and entities responsible for their injuries." ' [Citations.] More narrowly, the purpose of 'exempting [s]ection 340.1 civil actions for childhood sexual abuse from government tort claim requirements' is ' " 'to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from those responsible, whether those responsible are private or public entities.' " ' [Citations.]" (*West Contra Costa*, *supra*, at p. 1265.)

15

In reviewing the legislative history of Assembly Bill 218, the appellate court found as follows: "A Senate Judiciary Committee report explains, ' "Childhood sexual abuse has been correlated with higher levels of depression, guilt, shame, self-blame, eating disorders, somatic concerns, anxiety, dissociative patterns, repression, denial, sexual problems, and relationship problems." Given the horrific damage and life-long trauma that can be caused by childhood sexual assault, these claims are arguably worthy of such revival, despite the general disregard for doing so.' [Citation.] The report continued, characterizing the bill author's argument as follows: 'There are complex psychological effects that result from being victimized in this way. In addition, the systematic incidence of childhood sexual assault in numerous institutions in this country and the cover-ups that accompanied them arguably make both a revival period and an extended statute of limitations warranted. This bill provides another chance for victims, who are currently barred from pursing claims based solely on the passage of time, to seek justice.' [Citation.] An Assembly Judiciary Committee report included similar reasoning and also referenced proponents' arguments that 'the psychological injuries from sexual[] assault emerge later in life and that victims routinely need decades to reach the psychological place where they can come forward' and ' "[t]he residual effects of the trauma impact the survivor's education and employment, adding to the economic loss the individual suffers as a result of the crime." ' [Citations.]" (*West Contra Costa*, *supra*, 103 Cal.App.5th at pp. 1265-1266.)

The appellate court explained that a public purpose includes " 'those "which may tend to make [the] government subserve the general well-being of society, and advance the present and prospective happiness and prosperity to the people." ' [Citation.]" (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1267.) Regarding Assembly Bill 218, the appellate court found that "the Legislature sought to provide relief to a disadvantaged group of persons," which was "a sufficient public purpose under the gift clause." (*Ibid*.)

16

The appellate court in *West Contra Costa* found analogous *Scott v. State Bd. of Equalization* (1996) 50 Cal.App.4th 1597 (*Scott*). In *Scott*, a state constitutional provision "allow[ed] transfers of ownership of real property from parents to children without triggering a reassessment of the value of the property (the parent-child exclusion). [Citation.]" (*Scott, supra*, at p. 1600.) Over the years, the Legislature "established and then changed the time period during which the parent-child exclusion must be claimed." (*Ibid.*) At issue was a more recent statute that "retroactively extend[ed] the time period during which the exclusion from reassessment [could] be claimed." (*Id.* at p. 1600.) In rejecting a contention that there was no valid public purpose for the statute, the appellate court in *Scott* explained: "[T]he Legislature recognized flaws in earlier claims procedures which cut off the rights of taxpayers who, because they were unaware of the need to file a claim, inadvertently lost their parent-child exclusion. The statute here under attack was intended to rectify those flaws. [¶] 'A relief of hardship to a taxpayer is a valid public purpose . . . .' [Citation.] . . . [T]he motive was to give unwary taxpayers the benefit of the constitutional provision excluding a parent-child conveyance from reassessment. . . . We have no quarrel with the validity of the public purpose, and therefore conclude the legislation does not amount to an unconstitutional gift of public funds." (*Id.* at pp. 1605-1606.) In *West Contra Costa*, the appellate court determined that, "[b]y analogy, providing relief to a class of victims of childhood sexual assault who failed to file timely claims also serves a public purpose." (*West Contra Costa, supra*, 103 Cal.App.5th at p. 1269.) The appellate court concluded that "in seeking to aid victims of childhood sexual assault, the public purpose underlying Assembly Bill 218 is not fundamentally different from the public purpose involved in any of a number of other enactments providing assistance to other disadvantaged classes of persons 'in the best interests of the general public welfare.' [Citation.]" (*Ibid.*)

17

### f. Analysis

We agree with the appellate court's conclusion in *West Contra Costa* that Assembly Bill 218 does not violate the gift clause because Assembly Bill 218 does not create new substantive liability and serves a public purpose. (*West Contra Costa*, *supra*, 103 Cal.App.5th at pp. 1257, 1265.)

First, similar to *West Contra Costa*, we find the California Supreme Court's decision in *Chapman* instructive on the issue of whether no new substantive liability is created by Assembly Bill 218. In *Chapman*, assignors of the plaintiff paid the State of California to store coal on a public wharf. (*Chapman*, *supra*, 104 Cal. at p. 692.) The wharf broke, and all the coal sunk into the bay. (*Ibid.*) At the time of the incident, there was no statute allowing for the state to be sued for negligence under the circumstances. (*See id.* at p. 693.) Contract liabilities could be enforced against the state but only by "present[ing] the claim . . . to the state board of examiners for allowance . . . ." (*Id.* at p. 696.) The plaintiff (or the assignors) presented a claim for damages to the state board of examiners, but the board rejected the claim. (*Id.* at p. 692.)

After the wharf collapsed, the Legislature passed an act in 1893 that permitted " '[a]ll persons who have, or shall hereafter have, claims on contract or for negligence against the state, not allowed by the state board of examiners . . . to bring suit thereon against the state . . . .' " (*Chapman*, *supra*, 104 Cal. at p. 693.) The plaintiff sued the state, which successfully demurred to the complaint. (*Id.* at p. 691.)

The California Supreme Court reversed the judgment after concluding that the 1893 statute did not violate the gift clause. (*Chapman*, *supra*, 104 Cal. at pp. 693 [discussing Cal. Const., former art. IV, § 31], 696, 697.) The California Supreme Court observed that the state was not liable for the negligence of its officers in the performance of certain duties. Further, under the gift clause, "the legislature has no power to *create* a liability against the state for any such past act of negligence upon the part of its officers." (*Id.* at p. 693.)

18

However, the California Supreme Court construed the plaintiff's cause of action as "aris[ing] upon contract" and determined "that *the liability of the state accrued at the time of its breach*; that is, when the coal was lost through the negligence of the officers in charge of the state's wharf, *although there was then no law giving to the plaintiff's assignors the right to sue the state therefor*. At that time the only remedy given the citizen to enforce the contract liabilities of the state, was to present the claim arising thereon to the state board of examiners for allowance . . . ; but *the right to sue the state has since been given by the act of . . . 1893*, and in so far as that act gives the right to sue the state upon its contracts, the legislature did not create any liability or cause of action against the state where none existed before. *The state was always liable upon its contracts, and the act just referred to merely gave an additional remedy for the enforcement of such liability*, and it is not, even as applied to prior contracts, in conflict with any provision of the constitution." (*Chapman*, *supra*, 104 Cal. at p. 696, italics added.) Further, the California Supreme Court, quoting an out-of-state case approvingly, explained, " 'The fact that the state is not subject to an action in behalf of a citizen does not establish that he has no claim against the state, or that no liability exists from the state to him. It only shows that he cannot enforce against the state his claim, and make it answer in a court of law for its liability. What is made out by this objection is not that there is no liability and no claim, but that there is no remedy.' [Citation.]" (*Ibid*.)

In this case, the school district acknowledges that Doe's claims against it "accrued around 2004." (See *Rubenstein*, *supra*, 3 Cal.5th at p. 906 [explaining that a cause of action accrues " 'for purposes of the government claims statute' " on the same date that a claim accrues " 'under the statute of limitations applicable to a dispute between private litigants' "].) As Doe failed to comply with the government claim presentation requirement, and prior to the passage of Assembly Bill 218, "there was then no law giving [Doe] the right to sue the [school district] therefor." (*Chapman*, *supra*, 104 Cal. at p. 696.) The change in law—Assembly Bill 218's retroactive elimination of the

19

government claim presentation requirement—"merely gave an additional remedy for the enforcement of such liability" by " 'mak[ing the school district] answer in a court of law for its liability.' " (*Chapman*, *supra*, at p. 696.) Consequently, based on our Supreme Court's conclusion in *Chapman* that a statute allowing claims against the state to proceed in court does not violate the gift clause, we determine that Assembly Bill 218's retroactive elimination of the government claim presentation requirement, which similarly allows claims against a public entity to proceed in court, also does not violate the gift clause. (See *Chapman*, *supra*, at pp. 693, 696.)

The school district contends that Assembly Bill 218's retroactive elimination of the government claim presentation requirement creates new substantive liability. In support of this argument, the school district relies on case law stating that compliance with the claim presentation requirement is an element of a cause of action against a public entity. (See, e.g., *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990 (*DiCampli-Mintz*); *Shirk*, *supra*, 42 Cal.4th at p. 209; *State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1244 (*Bodde*); *Williams v. Horvath* (1976) 16 Cal.3d 834, 839-841 (*Williams*).)

We observe that the California Supreme Court's characterization of the claim presentation requirement as an element of a cause of action has been in the context of explaining that the claim presentation requirement " ' "is a condition precedent to a tort action and the failure to present the claim bars the action." ' [Citations.]" (*Bodde*, *supra*, 32 Cal.4th at p. 1240; accord, *DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 990; *Shirk*, *supra*, 42 Cal.4th at p. 209; *Williams*, *supra*, 16 Cal.3d at p. 842.) "However, under [the California Supreme Court's decision in] *Chapman* the crucial consideration is whether the Legislature has created new substantive liability, or, instead, has simply removed an obstacle to recovery imposed by the state as a condition of its consent to suit that is not an aspect of the underlying substantive liability." (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1263.) In this case, the school district acknowledges that Doe's claim

20

against the school district had already "accrued around 2004" prior to the passage of Assembly Bill 218. Consequently, the school district's "substantive liability for the alleged sexual assault[] exist[ed] independently of the claim presentation requirement. Thus, we conclude that no 'gift' occurred when the Legislature waived the claim presentation requirement with respect to alleged conduct for which the [school district] was . . . substantively liable when it happened." (*West Contra Costa*, *supra*, at p. 1264.)

Second, we determine that Assembly Bill 218 serves a public purpose. As noted in *West Contra Costa*, the legislative history for Assembly Bill 218 reflects that the Legislature considered and weighed the public policy implications of the bill. (See, e.g., Assem. Com. on Judiciary, Analysis of Assem. Bill 218 (2019-2020 Reg. Sess.) as introduced Jan. 16, 2019, p. 7 (Assembly Committee on Judiciary Analysis).)

For example, a bill analysis referred to "the uniqueness of childhood sexual abuse and the difficulty that younger victims may have fully understanding the abuse, coming to terms with what has occurred, and then coming forward in a timely fashion." (Assembly Committee on Judiciary Analysis, *supra*, at p. 1, italics omitted; see *id.* at pp. 2-3, 5.) The bill analysis stated that "[a]s a result, it may take years for victims to bring civil (or seek criminal) actions, if they bring them at all, against both direct perpetrators of child sexual abuse and those who allowed the abuse to occur and to continue." (*Id.* at p. 5.) Assembly Bill 218's author explained that existing law "*failed to provide an effective deterrent on entities* with a duty of care to children from sweeping sexual assault under the rug and engaging in cover-ups. These cover-ups have protected perpetrators of sexual assault over the well-being of the children in their care, and *allowed perpetrators to victimize more children*." (Assembly Committee on Judiciary Analysis, *supra*, at p. 7, italics added; see *Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 60, fn. 19 [explaining that if a bill " 'author's statements are part of committee materials—and are therefore relayed not

21

merely as personal views, but instead as part of the Legislature's consideration of the bill—they can serve as salient reflections of legislative purpose' "].)

The bill analysis explained that by further extending the statute of limitations for claims by such victims, Assembly Bill 218 "would change the law to provide more protection for victims who come forward later in life." (Assembly Committee on Judiciary Analysis, *supra*, at p. 158.) However, the Legislature also recognized that even if the statute of limitations was extended, the six-month claim presentation deadline would still limit the ability of childhood sexual abuse victims to pursue relief for claims against local public entities. (Assembly Committee on Judiciary Analysis, *supra*, at p. 9; Sen. Com. on Appropriations, Rep. on Assem. Bill No. 218 (2019-2020 Reg. Sess.) as amended Mar. 25, 2019, p. 2.)

Within this context of victims who may not have sufficient time to pursue relief, the bill analysis explained that "*perpetrators continue to abuse*, often with impunity, and sometimes with the help of third parties who either choose not to get involved or actively cover-up the abuse. . . . In an effort to allow more victims of childhood sexual assault to be compensated for their injuries and, *to help prevent future assaults* by raising the costs for this abuse, this bill extends the civil statute of limitations for childhood sexual assault by 14 years, revives old claims for three years, and eliminates existing limitations for claims against public institutions. This bill applies equally to abuse occurring at public and private schools and applies to all local public entities." (Assembly Committee on Judiciary Analysis, *supra*, at pp. 3-4, italics added; see also Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.) as amended August 30, 2019, p. 5.)

Regarding these changes provided by Assembly Bill 218, the bill analysis "noted that the elimination of the statute of limitations and the revival of actions against perpetrators or third parties *only assures that claims can be heard on their merits*. Any other applicable defense would not be affected, and plaintiffs would still have to prove all

22

the elements of their case." (Assembly Committee on Judiciary Analysis, *supra*, at p. 11, italics added.)

As the appellate court in *West Contra Costa* explained, a public purpose includes " 'those "which may tend to make [the] government subserve the general well-being of society, and advance the present and prospective happiness and prosperity to the people." ' [Citation.]" (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1267.) In this case, Assembly Bill 218 extended the statute of limitations, eliminated the government claims requirement, and revived previously barred claims. These changes serve a public purpose by preventing and deterring future sexual abuse. Specifically, the legislative changes provide childhood sexual abuse victims the opportunity to bring their claims in court, including claims against local public entities, so that their claims may be heard on the merits. This exposes the perpetrators of the sexual abuse and those who covered up the abuse, which prevents and deters further sexual abuse by those same and other potential perpetrators. It also notifies those authorized to care for children of the significant consequences of a failure to take action to address indicators of child sexual abuse – in other words, it serves as encouragement to report their suspicions and to take affirmative steps to protect the youngsters in their care.

The legislative history for Assembly Bill 218 reflects that this public purpose arose out of a recognition that significant damage is caused by childhood sexual abuse, such victims often come forward only years after the abuse has occurred, the time period in which a claim must be pursued and presented against a local public entity is relatively short, and perpetrators may continue to abuse children unless the perpetrators and any third parties aware of the abuse face civil legal liability. We thus conclude that "providing relief to a class of victims of childhood sexual assault who failed to file timely claims . . . serves a public purpose" (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1269) by preventing and deterring their perpetrators from committing further sexual

abuse and encouraging prompt investigation of signs of sexual grooming and assault of children. Prevention and deterrence of further sexual abuse benefits children as a class.

The school district contends that no public purpose can be served "as a matter of law" for "retroactive imposition of liability on public entities for previously unenforceable claims." The cases cited by the school district, however, do not support the school district's argument.

For example, in *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, the appellate court held that although the state's "settlement of [an] attorney fee dispute in this case is a public purpose," the "payment of a claim that exceeds the maximum exposure is akin to a payment of a wholly invalid claim and violates the gift clause." (*Id.* at p. 450.) However, "no benefit to the public, only benefit to [the] [a]ttorneys" had been shown in that case. (*Ibid.*)

In another case cited by the school district, *Orange County Foundation v. Irvine Co.* (1983) 139 Cal.App.3d 195, the state agreed to pay money in settlement to a company to clear title to property. (*Id.* at p. 199.) The company purportedly had no legal claim to the property. (*Id.* at pp. 199, 200.) The appellate court determined that the company's compromise of an invalid claim was not sufficient consideration for the state's payment, and therefore the payment would violate the gift clause. (*Id.* at p. 201.) However, no public purpose—other than settlement of an apparently invalid claim—was asserted in the case.

Similarly, the school district's reliance on *Conlin v. Board of Supervisors* (1893) 99 Cal. 17 is unpersuasive. In *Conlin*, the state passed an act directing San Francisco to pay an individual when, as the California Supreme Court ultimately determined, "there was no legal obligation" to do so. (*Id.* at p. 22.) The court concluded that the payment under these circumstances was an unconstitutional gift. (*Id.* at pp. 21-24.) In reaching this conclusion, the court explained that "[a]n appropriation of money by the legislature for the relief of one who has no legal claim therefor must be regarded as a gift within the

meaning of that term, . . . and it is none the less a gift that a sufficient motive appears for its appropriation, if the motive does not rest upon a valid consideration." (*Id.* at p. 22.) In a subsequent case, the California Supreme Court explained that in *Conlin*, "[t]here was no claim or suggestion that the moneys so directed to be paid were to be devoted to any public purpose. On the contrary, it was contemplated and intended that they should be paid to the private individual for his sole use and benefit. There was not and could not be in that case any question whether the proposed appropriation of public funds was for a private or public purpose. The purpose thereof was necessarily and admittedly private and this court held that such a use of public funds would constitute a gift such as is prohibited by the constitution." (*Oakland v. Garrison* (1924) 194 Cal. 298, 302.)

In contrast to these cases cited by the school district, we have determined that the Legislature had a valid public purpose in retroactively eliminating the government claims requirement for childhood sexual abuse claims against local public entities in order to prevent and deter further sexual abuse.

The school district contends that the legislative history of Assembly Bill 218 does not "offer[] a sufficient explanation" regarding how abuse would be deterred or prevented by holding school districts liable for abuse occurring prior to 2009. It appears from the legislative history, however, that the Legislature believed that by making perpetrators of abuse and third parties who have awareness of the abuse potentially civilly liable, victims would come forward to pursue claims, a spotlight would be placed on these perpetrators and third parties, and it may prevent or deter abuse by those perpetrators in the future. Indeed, the allegations in this case reflect this scenario, with the teacher allegedly abusing other victims in addition to Doe and remaining employed at the school district until Doe came forward "[y]ears later" and the teacher was arrested.

Accordingly, we determine that Assembly Bill 218 does not violate the gift clause because it does not create new substantive liability and it serves a public purpose.

**C.** *The School District May Not Assert a Due Process Claim Regarding Assembly Bill 218*

The school district contends in its respondent's brief on appeal that Assembly Bill 218 violates the school district's state and federal due process rights by "resurrecting extinguished claims." The school district acknowledges that it did not raise a due process claim in the trial court, but it contends that pure legal issues may be raised for the first time on appeal, especially if important public policy issues are involved.

Doe contends that the school district lacks standing to assert a due process claim and that the claim also fails on the merits. We agree with Doe's first argument and do not reach the second argument.

" ' "A public school district is a political subdivision of the State of California." ' [Citations.]" (*West Contra Costa*, *supra*, 103 Cal.App.5th at p. 1274.) " '[S]ubordinate political entities, as "creatures" of the state, may not challenge state action as violating the entities' rights under the due process . . . clause[] of the Fourteenth Amendment . . . .' " (*Id.* at p. 1273.) The rule is the same for a due process claim under the California Constitution. (*West Contra Costa*, *supra*, at p. 1274.) Therefore, the school district may not challenge Assembly Bill 218 on due process grounds. (*West Contra Costa*, *supra*, at p. 1276.)

## III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to vacate its order granting defendant North Monterey County Unified School District's motion for judgment on the pleadings and to enter a new order denying the motion.

26

_____
Greenwood, P. J.

WE CONCUR:



_____
 Lie, J.






_____
 Rodriguez, J.*




H052095 Doe v. North Monterey County Unified School District

_____
        * Judge of the San Diego County Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.